McKerall and others v. McMillan and others.

WATSON McKERALL and others *v.* JOHN P. McMILLAN and others.

In the interpretation of a written instrument, all its clauses must be construed, the one by the other, giving to each the sense resulting from the entire act. C. C. 1950.

Where a party binds himself to become the surety of a third person on his obligation to plaintiffs, the latter may enforce the obligation, though previously ignorant of the existance of any such contract. C. C. 1884. C. P. 35.

The answers of a party interrogated on facts and articles form a part of the pleadings, and either party may use them without formally introducing them in evidence. They form a part of the record, from which they cannot be withdrawn.

APPEAL from the District Court of St. Mary, *Boyce*, J.

The judgment below was in favor of the plaintiffs as against McMillan, and the suit was dismissed as to the other defendant, Brashear. From the judgment of dismissal, the plaintiffs appealed.

MORPHY, J. Walter Brashear, one of the defendants, is sought to be made liable as the security of John P. McMillan, for a sum of $ 2,988 23, with interest at ten per cent per annum from the 15th of December, 1841, being a balance alleged to be due by his principal on a lot of ground bought by the latter on the 6th of March, 1837, at a public sale made for the account of Watson McKerall and the heirs of P. A. Dejarnatt. The petitioners allege that some time after all the instalments of the sale had become due, they instituted legal preceedings against John P. McMillan, under which the property was seized, and sold on the 15th of December, 1841, for cash, and produced the sum of two thousand dollars, which, after paying the legal costs of said proceedings, reduced the price due by the purchaser to the said balance, which according to the terms of the probate sale bears ten per cent interest per annum. They further allege that

Baylis L. Wilcox became the security of John P. McMillan, and signed the *procès-verbal* of the sale as such, and that Walter Brashear, on the 26th of April, 1837, became the security of the said John P. McMillan, and promised to relieve B. L. Wilcox from any damage or loss from having become security for McMillan, and that B. L. Wilcox transferred to the petitioner all his rights against Brashear under this agreement, &c. The defendant, after a general denial, avers that he never did agree to become, and never did become security for John P. McMillan, for the purchase money of the property he bought of the plaintiffs; that he was not at the sale, and never signed the *procès-verbal* of the sale; that some time after the purchase, he signed a private act, by which he agreed with B. L. Wilcox, that, if the latter should sustain any damage by having become the surety of John P. McMillan, he was to make up such damages to him; that Wilcox never did suffer any such damage, or pay any money on account of said suretyship, and that, therefore, no right of action against him has ever accrued to said Wilcox, or to any one else in his right. The defendant further avers that the plaintiffs never paid any consideration for the aforesaid instrument, which was not negotiable; that if it has been deposited in the office of the parish judge of St. Mary, it has been without his knowledge, and makes no part of the papers of the succession of Dejarnatt, and that the plaintiffs obtained possession of said instrument by fraud and collusion, &c.

There was a judgment below in favor of the defendant Brashear, and the plaintiffs appealed.

The obligation which gives rise to this controvery is in the following words, to wit:

" I, Walter Brashear, of the Parish of St Mary and State of Louisiana, have and do hereby consent to become security for John P. McMillan, Esq., on his purchase made at probate sale on the sixth of March last, of property belonging to the estate of John A. Dejarnott, jointly with Watson McKerall, for the price of three thousand four hundred and fifty dollars ($ 3450), payable as set forth in the *procès-verbal* of sale, to-wit; one-third on the first of April, 1837, one third on the first of April, 1838, and one third on the first of April, 1839, to bear interest at ten

per cent per annum from time due, if not punctually paid, with mortgage on the property, and to relieve Baylis L. Wilcox from any damage or loss from having become security for said purchase.

Franklin, St Mary, April 26th, 1837.

WALTER BRASHEAR."

Relying on the concluding part of this instrument, and on the circumstance that it remained a long time in the possession of Wilcox before it was handed over and transferred to the plaintiffs, the defendant urges that its only purpose was to indemnify Wilcox, and save him harmless of any loss or damage he might sustain from having become surety for McMillan. The petitioners, on the other hand, contend, that it results from the whole tenor of the instrument that Walter Brashear intended to take the place and stead of B. L. Wilcox, as security of Mc-Millin, and thus relieve him from any loss or damage. The latter construction appears to us the only one that can be put upon this obligation in order to give effect to every part of it. Were it intended only as a bond of indemnity to Wilcox, where was the necessity or reason of the defendant's explicitly binding himself as the surety of McMillan, and detailing with so much preciseness the conditions of the sale. Would it not have sufficed to bind himself directly to Wilcox, to save him harmless of any damage or loss resulting from his suretyship? One of the first rules laid down for the interpretation of all written agreements is, that all the clauses in them must be interpreted the one by the other, giving to each the sense that results from the entire act. Civil Code, art. 1950.

The circumstance of this paper remaining in the possession of B. L. Wilcox until January, 1842, and then only being transferred to the plaintiffs, does not vary our opinion as to its meaning and intent. It may have been neglect on his part, or the desire of preserving an instrument in which he had an interest. The transfer he thought proper to make of this paper, when he handed it to the plaintiffs, was useless, and added nothing to their right of availing themselves of the obligation entered into by the defendant as the surety of their debtor, even if they had

been ignorant of its existence up to that time. Civil Code, art. 1884. Code of Practice, 35. 6 Mart. N. S. 152. 2 Mart. N. S. 672. The circumstances stated by one of the plaintiffs, in his answers to the interrogatories propounded by the defendant, clearly show that the instrument now sued on was only executed to carry out an agreement originally made by McMillan, that Brashear should be his security. The counsel for the appellee has urged that these answers are not evidence in the case, because the judge below made no mention of them in the note he took of the evidence adduced on the trial. We think otherwise. The answers of a party interrogated on facts and articles form a part of the pleadings, and either party may use them without formally introducing them in evidence, in the same manner as either party may have the benefit of any admission in the petition or answer. They belong to the record from which they cannot be withdrawn. Code of Practice, arts. 348, 354. 5 Mart. 272, 592. 5 *Ib.* N. S. 179.

In the present case, the defendant put interrogatories to the plaintiffs, but so framed them if taken for confessed against those parties who failed to answer, they establish no specific facts. Two of the petitioners have, however, answered. One of them states that when McMillan became the purchaser of the property, he tendered to the parish judge the name of the defendant, which was accepted, and that the sale was left open for some time, when, Brashear not making his appearance, McMillan offered Baylis L. Wilcox, who, he stated would be security only for a few days, and that when Dr. Brashear arrived he would sign the *procès-verbal*; but that the doctor not appearing for some time after the sale, it was thought best by the judge that an agreement should be drawn, in which he (the doctor,) should promise and bind himself to become security for the purchase money, and to relieve Wilcox from any damage or loss from having become security; which agreement was drawn up by the judge, and was a paper that should have been filed with the papers of the estate, but that it was taken by Wilcox, from whom it was afterwards obtained without any other consideration, than a promise to look to Brashear for any amount that might be due as the balance of the purchase money. Were the

instrument susceptible of a different construction from that we put upon it, this evidence would remove all doubt as to its true intent and meaning; but we could have none, even if we were called upon to construe it without the aid of any testimony.

It has been objected in this court, that the record contains no evidence of the sale alleged to have been made on the 15th of December, 1841, for $2000. To this it may be answered, that the defendant is liable for the whole amount of the price due by his principal. He cannot complain of the credit allowed him for the amount brought by the property at the sheriff's sale, unless he shows that the property brought more. This he has not attempted to do. We must, therefore, conclude, that the credit allowed to him was a proper one.

It is, therefore, ordered, that the judgment of the District Court be reversed, and that the petitioners recover of the defendant, Walter Brashear, the sum of two thousand nine hundred and eighty-eight dollars and twenty-three cents, with ten per cent per annum interest thereon from the fifteenth day of December, 1841, until paid, with costs in both courts.

*Maskell* and *T. H.* and *W. B. Lewis*, for the appellants.
*Crow, Porter*, and *Dwight*, for the appellee.