### L. E. Turner, Curator, *v.* C. D. Smith et al.

An acknowledgment by the father of natural children by his own slave, besides being offensive to morals, is a mere nullity.

A slave can neither sue for alimony nor inherit.

The Act of the Legislature of the 6th March, 1857, which forbids the emancipation of slaves thereafter in this State, renders impossible the enfranchisement of slaves under a last will and testament, not carried into execution for that purpose prior to the passage of the Act of the Legislature.

The testator, after a disposition in favor of his slave *Rachel* and her children, of one-third of his estate, declared as follows : " *I give and bequeath the remainder of my estate to my said executor, Charles Dudley Smith.*" *Held :* That as it was not the intention of the testator to give to his executor the portion of the estate previously devised to others, the legacy in favor of the slaves which lapsed in consequence of the impossibility of their enfranchisement, enured to the benefit of the heirs of law of the testator as in case of intestacy.

APPEAL from the District Court of West Feliciana, *Ratliff*, J.

*U. B. & E. Phillips*, for plaintiff.    *S. J. Powell, Muse* and *Miller*, for the heirs, appellants.

Buchanan, J. *John Turnbull*, a resident of the parish of West Feliciana, made the following declaration in writing before a notary public and two witnesses of said parish, on the 19th day of December, 1855 :

"That he does by these presents acknowledge *Mary*, a girl of mulatto color, aged about seven years ; *Eliza*, a girl of mulatto color, aged about six years ; *Dudley*, a boy of mulatto color, aged about four years ; *Charles*, a boy of mulatto color, aged about two years ; and *Minerva*, a girl of mulatto color, aged about five months, to be his children, by him begotten of their mother *Rachel*, a mulattress or griffe, aged about twenty-three years ; said children and their mother being now his slaves."

On the same day that he made this declaration, (the 19th December, 1855,) *John Turnbull* made his olographic testament, containing the following (with other) clauses :

"I give and bequeath to my natural children, *Mary*, a girl of mulatto color, aged seven years ; *Eliza*, a girl of mulatto color, aged six years ; *Dudley*, a boy of mulatto color, aged four years ; *Charley*, a boy of mulatto color, aged two years ; *Minerva*, a girl of mulatto color, aged five months, (now my slaves,) their freedom, and direct my executor to take the steps necessary to obtain their emancipation according to the laws of this State, or to send them to some country or State, to be by them selected, where slavery is not recognized, if their emancipation with leave to remain in the State cannot be lawfully obtained ; in either case, the costs and expenses of obtaining their emancipation and removal to be borne by the mass of my estate. I also give and bequeath her freedom to my slave woman *Rachel*, of mulatto color, aged about twenty three years, and I wish my executor to cause her to be emancipated with permission to remain in the State, or if this cannot be done, to remove her to some free State or country, all at the cost of my estate. I also give and bequeath to my said natural children, duly acknowledged by me by public act passed before *D. C. Jones*, notary public, on the 19th December, 1855, to wit, *Mary, Eliza, Dudley, Charley, Minerva*, and to their mother, *Rachel*, whom I have directed to be emancipated, one-third of my entire estate, to be divided equally among them, or as many of them as may be living at my death."

53

TURNER
*v.*
SMITH.

*John Turnbull*, the testator, died on the 17th June, 1856; and his will was admitted to probate and execution on the 27th June, 1856. *Lewis E. Turner*, the plaintiff, was appointed by the court curator of the slave *Rachel* and her children, mentioned in the will, and has brought this suit against the executor, who is also universal legatee, as well as against the next of kin and heirs at law of the testator. His petition prays, that the last will and testament of *John Turnbull* be decreed to be good and valid, and be ordered to be carried into effect and executed in all its parts; and that the legacy to *Rachel* and her children be ordered to be set apart and paid over to petitioner in his capacity of curator. The executor answered, joining in the prayer of the petition, but praying that in case any of the legacies should lapse or be set aside, that the same might enure to his (the executor's) benefit as residuary legatee. The heirs at law also joined issue, pleading the nullity of the clauses of the will which we have copied above, and of the notarial declaration of paternity, as being contrary to law and good morals. They further pray that they may have judgment for the property devised to *Rachel* and her children, and that the emancipation of the devisees be declared null.

It is unnecessary for us to inquire how far the dispositions of *Turnbull's* will would have been susceptible of execution, previous to the passage of the Act of the Legislature of the 6th March, 1857, entitled an Act to prohibit the emancipation of slaves.

We consider it proper, however, to declare our conviction that the so called act of acknowledgment of the children of *Rachel* as the natural children of the testator, is a mere nullity. The object of an acknowledgment of a natural child, is to confer upon such child certain rights, such as alimony, or inheritance. But a slave can neither sue for alimony nor inherit. And the same notarial act which declares the individuals named to be *Turnbull's* children, declares at the same time that they are his slaves. Such an acknowledgment, besides being offensive to morality, is without any operation or effect in law. In the case of *Fletcher*, 11 An. 59, we gave effect to an acknowledgment of paternity by a free man in regard to his slave, but in that case, the acknowledgment was contained in an act of enfranchisement which had received full and entire execution.

In the present case, *Turnbull* took no steps towards emancipating the children of *Rachel* during his lifetime, although he lived for six months after the so called act of acknowledgment. His declaration, in his will, of an intention to enfranchise them, was only intended to be operative after his death; and could not produce any effect until after his death, because it was always in his power, up to the moment of his death, to revoke his will. C. C. 1455.

No steps had been taken by the executor of *Turnbull* towards manumitting these slaves, up to the institution of this suit, (3d September, 1856,) nor at any time subsequently, so far as we are informed by the pleadings and evidence. In the meantime, the Act of the Legislature of the 6th March, 1857, above alluded to, has been promulgated. It is as follows:

"Be it enacted by the Senate and House of Representatives of the State of Louisiana in General Assembly convened, That from and after the passage of this Act, no slave shall be emancipated in this State."

The enfranchisement of *Rachel* and her children having thus become legally impossible, the legacy made to them by the testator of one-third of his estate has lapsed.

The subject of enfranchisement of slaves is one over which the State has al-
ways exercised a controlling power.   In the case of *Delphine* v. *Guillet*, 11
Ann. 425, we said: "The policy of the State has annexed conditions to the
enfranchisement of slaves, which the court cannot permit to be disregarded."
This language holds good of a legislative prohibition to enfranchise altogether.

The only question that remains is, to whom shall the lapsed legacy enure—
to the residuary legatee, or to the heirs at law ?   ·Upon this point, the case of
*Compton* v. *Prescott*, 12 Robinson, is conclusive in favor of the heirs at law.

The clause in *Compton's* will was: "I give and bequeath all the remainder of
my estate, real and personal, to my four neices, (naming them,) to be equally
divided among them."

This was held to exclude an intention on the part of the testator to give, in
any event, to those neices, that portion of the estate previously devised to
others ; and those previous devises which were set aside, accordingly enured
to the benefit of the heirs at law as in case of intestacy.   The words of the
residuary devise in *John Turnbull's* will, were similar.   Immediately follow-
ing the dispositions in favor of *Rachel* and her children, we read: "I give and
bequeath the remainder of my estate to my said executor *Charles Dudley
Smith.*"   12 Rob. 63 to 67.

It is, therefore, adjudged and decreed, that the judgment of the District
Court be reversed; that as to the bequest of freedom to *Rachel* and her five
children, contained in the last will and testament of *John Turnbull*, the de-
mand of plaintiff be rejected ; that the legacy by universal title of one-third
of the testator's entire estate to *Mary, Eliza, Dudley, Charley, Minerva*, and
to their mother *Rachel*, to be equally divided among them, or as many of them
as may be living at the testator's death, be annulled, avoided, and considered
as not written ; that *Charles C. McDermott, Anne E. Smith, Sarah Sterling*,
wife of *Lewis Sterling, Sen., Isabella Semple*, and *Daniel Turnbull*, heirs at
law of the deceased *John Turnbull* and appellants herein, recover of *Charles
Dudley Smith*, testamentary executor of *John Turnbull*, one-third of the en-
tire estate of the said *John Turnbull*, to be computed ·from the date of the
opening of the succession ; and that the plaintiff and appellee pay costs in both
courts.