No. 11,436.

UNION NATIONAL BANK VS. J. E. CHOPPIN ET ALS.

In a suit brought by the Union National Bank as one of the joint owners of a plantation against three brothers, each holding an undivided one-fourth interest in the property—one of the defendants died leaving as his presumptive heirs, his mother, a sister, the two brothers already in court and a fourth brother. The mother died without either accepting or renouncing as his heir. On motion of plaintiff the three brothers and the sister were made parties and cited as heirs of their mother and also of their brother. After "judgment by default" against all the defendants, but prior to the confirmation thereof, the parties so cited appeared and announced that they had renounced and did

then renounce the succession of their mother and suggested that no further proceedings could take place until the succession of the mother was represented by an administrator. The court, thinking otherwise, rendered a decree for the sale of the property and a partition. The defendants appealed. *Held:*

1. That the "judgment by default" did not conclude the parties and cut off a renunciation by them of their mother's succession—such a judgment not being definitive in its character.

2. The tacit admission resulting from the judgment by default disappeared at once upon the filing of the disclaimer without the necessity of a formal setting aside of the default by motion.

3. It was not necessary, in order to prevent judgment being rendered against these parties as heirs of their mother, that they should have renounced her succession by notarial act; the paper filed by them sufficed for that purpose. Defendants owed no duty to plaintiff—were not its debtors and could not be forced against their will to accept the succession.

4. The parties cited having, however, not disclaimed being heirs of their BROTHER, but allowed a definitive judgment to be given against them as such, must be held to have accepted HIS succession and they as such heirs represent directly an interest in the interest formerly held by him.

5. The immediate heirs of the mother having renounced her succession and there being no others known, plaintiff and the court are warranted in acting upon the assumption that the interest which had been cast upon the mother had devolved upon the sister and the three brothers by reason of accretion and the indivisibility of their acceptance of their brother's succession.

6. A sale by licitation made contradictorily with the parties now before the court will convey a legal title to the purchaser.

APPEAL from the Twentieth Judicial District Court, Parish of St. James. *Guion, J.*

*Sims & Poché* and *Carleton Hunt* Attorneys for Plaintiff and Appellee.

*Pugh & Lambremont* Attorneys for Defendants and Appellants.

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiff corporation in 1889, as owner of an undivided portion of the Home plantation, in the parish of St. James, brought this suit against the three original defendants, Dr. Pierre F. Choppin, Louis H. Choppin and Joseph E. Choppin, then the owners of the other undivided portions of said plantation, for the purpose of obtaining a judicial partition of the property. The three defendants were cited, and in due course P. F. and L. H. Choppin filed their answer. J. E. Choppin not answering, a judgment by default was entered against him.

Subsequently to this Joseph E. Choppin died, leaving as his legal representatives, his mother, Eugenie Forstal, widow of Valerien Choppin; his sister, Mrs. Adele Choppin, wife of Robert G. Dugué; his brother, Fernand Choppin, and his two brothers, Pierre F. and Louis H. Choppin, the two latter being, as we have seen, original defendants in the case. On the suggestion of the death of J. E. Choppin, plaintiff obtained an order of court making his legal representatives parties. A copy of this order was served on those representatives, but no citation was served. Subsequently one of those representatives (Mrs. Valerien Choppin, the mother) died, without having appeared or filed answer. Whereupon plaintiff obtained another order, making *her* heirs parties. A copy of this order was served on said heirs on the 29th and 30th May, 1891, also without citation. On the 2d of June, 1891, only two days after service of the above order, the cause was, on plaintiff's motion, set down for trial on June 10. On that day (over the objection of counsel of P. F. and L. H. Choppin, who thereupon withdrew and refused to take part) the case was taken up, tried and decided. The two original defendants surviving, appealed. On appeal the judgment rendered was avoided and reversed, and the case remanded for further proceedings (see Union National Bank vs. J. A. Choppin et al., 44 An. 171), the court holding that where the defendant in a cause has "not answered" further proceedings against his heirs must be conducted in conformity to Art. 120 of the Code of Practice, and the citation or notice and the delays therein prescribed must be allowed.

After the case had returned to the District Court the plaintiff filed a petition setting forth the death of J. E. Choppin and Mrs. Valerien Choppin, and the names of the legal representatives of both of them (the legal representatives being the same persons in each case), viz: P. F. Choppin and L. H. Choppin (the two original defendants), Fernand Choppin and Mrs. Robert G. Dugué, and praying that as such they be duly cited to appear, etc., and that the decree of partition be rendered contradictorily with all parties in interest. Service having been made on these new parties and no answer having been filed by them, a judgment by default was entered against all of the defendants on the 7th of February, 1893.

On the 14th of February the defendants appeared and filed the following document:

"Into court now comes Robert Fernand Choppin, Pierre F. Choppin, Henry L. Choppin and Mrs. Robert G. Dugué and her husband, to authorize and assist his said wife, solely and exclusively for the purpose of suggesting and informing this Honorable Court that they have renounced and do hereby renounce the succession of Widow Valerien Choppin, their mother; that the succession of said Widow Choppin has been opened and prayer for administration thereof made in this Honorable Court; that until said administrator is appointed this suit should not be proceeded with, as there is no person capable of standing in judgment for said succession."

On the day the case was fixed for trial plaintiff moved to take it up pursuant to assignment, but defendants objected to doing so "by reason of the filing of their suggestion, February 14, 1893;" and thereupon the court ruled that it would hear evidence upon the suggestion, as it considered that the proper mode for proceeding with the case would be first to hear evidence upon the character of the renunciation relied upon as in the nature of an exception peremptory in its character. The only evidence offered by the defendants named in the suggestion was an application filed by Henry L. Choppin to be appointed administrator of the succession of Widow Valerien Choppin, and a petition for an inventory also filed by the same person on the 13th day of February, 1893.

In the last petition it is stated that petitioner had heretofore applied to be appointed administrator and for an inventory, but that although the latter had been ordered, it had not yet been taken by Robert G. Dugué, notary. Upon this application the district judge ordered an inventory to be made by the district clerk, *ex-officio* recorder.

After hearing the evidence the court ruled that the suggestion filed on February 14, 1893, should not be entertained, as it did not amount to a renunciation of the succession of Mrs. V. Choppin; that even had a renunciation in due form been shown the trial of the case should not be arrested, there being no *personal judgment* sought against the suggestors, the action being simply to partition an estate.

The court ordered the case to be proceeded with, whereupon counsel for defendants announced that he would take no part in the proceedings for the reason stated and reserved a bill of exceptions.

The case was submitted to a jury, a verdict rendered in favor of plaintiffs as prayed for and a definitive judgment of partition ordered.

From this judgment the defendants prosecute the present appeal, and plaintiff for answer to the appeal prays for damages in the sum of five hundred dollars on the ground that it is frivolous.

The *syllabus* of defendant's brief, with the authorities there referred to, concisely shows the position taken by them. Their contention is:

1. That in an action of partition all parties in interest must be joined or represented, and on issue by one of the defendants plaintiff must show that the proper parties are before the court. C. C. 1329; Man. 42; Hennen's Digest, 1076, No. 7; 30 An. 182; 31 An. 394; 2 An. 446; 16 La. 157.

2. The heir is only considered as heir as long as he does not manifest the will to divest himself of that right by renouncing the succession. C. C. 1014; 31 An. 261.

3. Heirs, by renouncing, become strangers to the succession, the same as if they had never been heirs, and can not stand in judgment touching or concerning any right of the deceased. This renunciation *retroacts* to the opening of the succession, and, in point of law, the heirs have never been heirs. 31 An. 261; 33 An. 100.

4. Art. 1017, C. C., is not exclusive of every other mode of renunciation. A succession may be legally and validly renounced by a judicial declaration to that effect, if, in his pleadings in obedience to any action of any party in court, the court is called upon to say whether he accepts or renounces. If the heir renounces in open court, by his pleadings, he is not required to comply with Art. 1017. 33 An. 101; 44 An. 553.

5. The heirs of Mrs. Choppin, in a fit and appropriate proceeding, informed the court that they had renounced the succession of their ancestor, " and do hereby renounce the same." This judicial admission is binding on them, and constitutes full proof against them, and the court should have upheld the renunciation. 33 An. 101; C. C. 1036, 1037, 1038, 2290, 2291; 31 An. 261; Hennen's Digest, 519; No. 2—520, No. 22; 43 An. 729, 822; 34 An. 815; 23 An. 809; 13 An. 409. Having renounced, the defendants were strangers to Mrs. Choppin's *succession*, and no further proceedings should have been taken until the succession was represented. 38 An. 243; 2 An. 466; 42 An. 880; 21 An. 486; 31 An. 574; 35 An. 289; 13 An. 487; 18 An. 282; 34 An. 323, 591.

6. On the trial of their plea, defendants showed that the succes-

sion of Mrs. Choppin had been opened in St. James. It was not necessary to offer in evidence the pleadings.   9 Rob. 22; 27 An. 537.

7. The renunciation contained in the pleadings constituted full proof against the defendants.   C. C. 2291; Hennen's Digest, 519, No. 2.

8. Mrs. Choppin's interest in the property sought to be partitioned being unrepresented, no valid judgment of partition could be rendered for want of proper parties.   31 An. 394.

9. Plaintiff complains of delay, but, as said in 44 An. 170, the precipitate proceedings of plaintiff were in disregard of the legal rights of appellants.   Plaintiff can blame no one for its own illegal acts.

Plaintiff's contentions are set forth in the syllabus of their brief with equal conciseness, as follows:

" 1. The defendants and appellants are estopped from denying the fact of their being the legal representatives of Mrs. Choppin, or their capacity as such to stand in judgment in this case.   They assumed that quality in their appeal before this court. No. 10,972 of the docket.   They can not now shift their position to a contradictory one to defeat the action of the law upon it.   44 An. 171;  Hennen's Digest, Vol. 1, pp. 519 and 520;  6 M. 280;  4 An. 416;  11 An. 710;  5 An. 8, 18;  6 An. 719;  11 An. 501;  12 An. 558;  Succession of 'Plunkett, 12 An. 445;  Reed vs. Crocker, 14 An. 308.

" 2. The document filed February 14, 1893, is not a plea—it contains no prayer, and is neither an exception nor an answer.   It merely suggests non-action by the court upon a statement unsupported by proof.   Disclaimer of heirship is a matter of privilege and must be presented and urged by plea.   7 An. 239.

" 3. If said document be considered in the light of an exception it is of the dilatory kind and must be pleaded in limine, and could not be pleaded after issue joined.   The object of the plea was to secure personal immunity by disclaimer of rights of heirship, so as to affect the legal status of the pending partition suit then at issue with all parties in interest.   This the defendants could not do after default, which is equivalent to issue joined by answer.   Hennen, 1163;  C. P. 333;  12 La. 618;  6 R. 484;  11 Rob. 7;  10 An. 140;  1 An. 117;  11 An. 686;  14 An. 658;  8 An. 73;  7 An. 239;  19 La. 429;  1 La. 113-283.

" 4. No proof adduced of fact of renunciation.   Application of one of defendants for letters of administration and for inventory in suc-

cession of Mrs. Choppin implies acceptance under benefit of inventory. Duty of beneficiary heir to provoke inventory. C. C. 1035; 12 An. 610; 2 An. 268.

" 5. The default entered February 7, 1893, against all of the defendants was not set aside; by failure to answer, defendants presumed to confess justice of plaintiff's demand for partition. C. P. 360. Delays having expired after default, the judge correctly ' decreed the partition.' C. P. 1027.

" 6. In partition suit the heirs must be parties; they alone are capable of standing in judgment. Executor or administrator can not. C. C. 1329; C. P. 123-1024; 2 An. 341; 7 An. 477; 30 An. 177; Boutte vs. Boutte, 26 An. 606; Veazy vs. Trahan, 4 An. 571; 17 La. 348; 19 La. 36; 4 An. 56-571; 16 La. 157; 4 An. 260; 15 An. 250. All rules governing partitions of successions applicable to partitions between ordinary co-proprietors. C. C. 1289-1290. No inventory necessary. 36 An. 318; 44 An. 550.

" Heir considered seized of succession from date of parent's decease, and becomes undivided proprietor of its effects. Right of possession of deceased continues in heir and latter holds in common with co-heirs until division is made. C. C. 1292; 5 An. 561; 21 An. 253.

" 7. Appeal is frivolous and appellee is entitled to damages. Hennen, Vol. 1, pp. 101-102; 3 N. S. 248; C. P. 907; 31 An. 427."

The parties who filed the paper referred to had been, upon the motion of the plaintiff itself, cited and made parties as heirs of Mrs. Choppin; they were therefore not strangers to the controversy, but had an interest in not permitting a final judgment to be rendered contradictorily with them as heirs of their mother. They had the legal right to appear in court and disclaim an interest in that capacity in the suit just as a lessee or any other person would have the right to disclaim. Whether their disclaimer at the time and as made would be available to them is a different question. If in point of fact and law they were not at that time the legal heirs of their mother, and if it would be legally necessary to thereafter make such heirs parties, the suggestion made in the paper would bring the court and the plaintiff itself to confront not a mere question of form or of pleading, but a fact, and one of such a character as possibly to radically affect the legality of any sale which might subsequently be made in the partition proceedings. Not only were the two surviving original

defendants standing upon their original rights as joint owners inter-
ested in the legality of the proceedings, but the plaintiff itself was
concerned in the result. The court properly considered the paper
as having been legally filed, and acted upon it.

Article 1329 of the Civil Code declares that where a partition suit
is brought by one heir, who wishes to partition, the co-heirs or their
representatives must be cited, and the decisions have been, as far
as we know, unvarying that in all partition proceedings all parties in
interest must be before the court. When we say the proper parties
must be before the court we mean that the action must have proper
parties not only at its beginning (Dugas vs. Truxillo, 15 An. 117), but
throughout to its close. If during the progress of a suit an interest
which the law required necessarily to be represented, and which at
one time was represented, should cease to be so, either by death or
other legal cause, steps would ordinarily have to be taken to replace
its representative and to cause it to be again represented, no matter
how much delay might result from carrying out this legal require-
ment. Plaintiff concedes that that portion of the joint interest held
by J. E. Choppin which devolved upon his mother as one of his
heirs at his death must be legally represented in the proceedings,
and it has attempted to have this done. We are therefore to inquire
whether that interest is still represented or CAN BE HELD AS legally
represented in the present proceeding. If it is NOT, and it should be,
we will be powerless, no matter how apparent defendant's motive in
renouncing their mother's succession might be, to postpone a partition
to which they object.

In the examination of that question the first proposition which
meets us is whether at the time the presumptive heirs of Mrs.
Choppin (in what we will style the renunciation of their mother's
succession) declared that they did so renounce they were precluded
from doing so by the time and circumstances under which this was
done. In support of the contention that they were precluded, the
first reason assigned is that after having been cited as heirs of their
mother they had permitted a judgment by default to be entered
against themselves as such, and that that judgment has never,
by motion, been set aside; that that fact fixed their *status* as such
heirs. Defendants meet this by the declaration that they knew of
no law which prevents an heir from renouncing up to the time that
he permits *judgment* to be rendered against him; that "judgment"

is a technical expression, and does not mean judgment by default as defined in the Code of Practice; that Article 1000, C. C., says *when* the penalty of liability shall be inflicted on the heir, and that the penalty only springs into existence when the heir, in the very words of the law, " suffers judgment to be given against him;" " that penalties can not be extended, and when the law specifically fixes and determines *when* the penalty shall be inflicted is a prohibition against it under all other conditions; that judgments by default create a tacit issue, but do not cut off peremptory bars or exceptions; that pushing the doctrine advanced to its legitimate conclusion we would have to interpolate and read into Article 1000 the words ' judgment by default;' whereas, the article, as it now stands, requires a ' judgment ' to be rendered before the heir is liable; that up to the rendition of the ' judgment ' defendants' right to renounce was given them by law, and they exercised this right at the time and under the conditions laid down by the LAW."

The general rule governing the acceptance of successions is contained in Article 977 of the Civil Code, wherein it is declared that " no one can be compelled to accept a succession in whatever manner it may have fallen to him, whether by testament or the operation of law. He may therefore accept or renounce it."

This general rule is modified under the special circumstances referred to in Articles 1021 and 1071 of the Civil Code, but the contingency for which these articles provide does not arise in this case. Article 1031 of the Civil Code announces the general rule as to renunciations to be that " so long as the prescription of renunciation is not determined the heir may still renounce, provided he has done no act to make himself liable as heir."

As bearing upon the question as to the circumstances under which a presumptive heir would by his own act render himself liable as an heir, we quote as follows from our Civil Code:

" The person called to the succession does an act which makes him liable as an heir if, when cited before a court of justice as an heir for a debt of the deceased, he suffers judgment to be given against him in that capacity without claiming the benefit of inventory or renouncing the succession." Art. 1000.

" If the heirs thus cited (to declare whether they accept or renounce the succession) declare that they accept the succession, or if they are silent or make default, they shall be considered as having

accepted the succession as unconditional heirs and may be sued as such.'' Art. 1037.

'' In case the heir makes default on this demand, he shall be considered as unconditional heir and be bound as such.'' Art. 1057.

In Art. 1010, C. C., we find explained the character of the '' default '' here referred to. It is there declared that '' he (the presumptive heir) must not have been decreed by a definitive judgment to be the unconditional heir, nor have accepted at the suit of the creditors instituted to oblige him to assume this quality.''

A '' judgment by default '' not being a DEFINITIVE judgment, we must hold that the fact of renouncing is not lost by simply permiting such a judgment to be entered, provided the renunciation be filed prior to the CONFIRMATION.

It was not essentially necessary that the judgment by default should have been '' set aside '' by motion to that effect prior to the filing of the renunciation. See Hassam vs. McVittré, Manning's unreported cases, p. 192.

The judgment by default evidences, it is true, a tacit admission, but it necessarily disappears when, prior to such an admission being acted upon, a paper is filed which directly negatives the fact supposed and deemed to have been admitted. The plaintiff next claims that the defendants were estopped from renouncing for the reason that on the former appeal their heirship was admitted by them and the only question raised by them was as to the sufficiency of the notice served on them as heirs of J. E. Choppin and Mrs. Choppin.

The defendants filed no pleadings in the former suit—they simply abstained from taking part in the trial of the case, and after the judgment of partition had been rendered they appealed. They did not assume anywhere in the proceedings the quality of heirs of either their brother or their mother. Their complaint *was not that they as such heirs* had not been properly made parties, but that *the heirs* of J. E. Choppin and Mrs. Choppin had not been cited. There were several persons *other than themselves* who were the presumptive heirs and to whom this objection might apply. Plaintiff overlooks the fact that the two surviving original defendants, as two of the three joint owners, had *substantive rights of their own* in the matter of regularity and legality of the partition, which authorized them to raise and urge the objection they did *independently of any question of heirship.* We do not think they were estopped on the ground urged.

Plaintiff next claims that the defendants have not renounced the succession of their mother. That Art. 1017 of the code requires that the renunciation of a succession should be by authentic act, and that an attorney at law has no authority, by pleadings on behalf of his client, to bring about such a result.

We will not discuss, in all the various phases which it might take, the question whether an authentic act be necessary to operate the renunciation of a succession. We limit our inquiry to the facts of the particular case before us, which is that of a THIRD PERSON attempting to proceed as plaintiff in a partition suit against defendants upon the hypothesis that they are the heirs of a person deceased. It is not claimed that the defendants are the debtors of the plaintiff, or owe him any legal duty. They are not legally called upon to accept the succession of their mother, and can not be required to take that position. The plaintiff by simply suing them could not FORCE them so to do. The success of plaintiff's attempt was CONTINGENT upon either their SILENCE or upon proof by the plaintiff (should the defendants deny their *status* as heirs) that they had done some act which had bound them to that *status*. But the defendants *were not only not silent*, they expressly disclaimed, and there is no proof on the record of their having committed themselves by any act to being heirs of their mother. By their pleadings they have certainly estopped themselves from ever setting up adversely to the plaintiff any right predicated upon their being their mother's heirs. Had the defendants renounced by *notarial act* they could still accept the succession, provided it had not, in the meantime, been accepted by other heirs, but they could not do so to the prejudice of acts done on the faith of their renunciation. Their course here as effectually concludes them as if evidenced by a notarial act.

We are next to consider what the effect (if any) is of the renunciation by the defendants of Mrs. Choppin's succession.

If we consider Mrs. Choppin's succession as not being DIRECTLY a party to the proceedings as they stand, who are the actual parties defendant and in what capacity?

The two surviving original defendants are in actual possession of the property sought to be partitioned; they are in court individually as holders of their original rights as joint owners, and they have not disclaimed being the heirs of their brother, J. E. Choppin, who held also a joint interest. Fernand Choppin and Mrs. Dugué are also be-

fore the court as heirs of their brother; therefore J. E. Choppin's in-
terest is (to a certain extent at least) *actually and directly* repre-
sented by the three brothers and the sister. A portion of *J. E. Chop-
pin's* interest—that portion which devolved at his death upon his
mother—*is either still outstanding vested in her vacant succession, or
in some heir who is up to date unknown* and has not *presented himself,*
or it has been cast upon the two original defendants, the brothers of
the deceased, Fernand Choppin and Mrs. Dugué, who have accepted
HIS succession by reason of accretion and indivisibility of such ac-
ceptance. C. C., Arts. 986, 1022, 1024.

The portion of *J. E. Choppin's* interest which devolved upon Mrs.
Choppin was never accepted by her. During her lifetime she took
no action in the matter as far as we are advised, and when she died
this interest was transmitted as a right belonging to her succession—
subject to acceptance or rejection, unless controlled by exceptional
facts. Such we understand to be the present position of affairs in
this matter. The present action it must be remembered is not one
*inter se* of co-heirs holding under a common or single title, but the
action of a third person holding a joint interest in real estate by dis-
tinct title suing the heirs or supposed heirs of a person who held
another joint interest in the property, which heirs as between them-
selves hold under a common or single title that joint interest.
Under the *peculiar circumstancs of this case* is it essentially necessary
that matters should be stayed either until a *curator* should be ap-
pointed to the succession of Mrs. Choppin as a vacant one, or until
the persons who upon the renunciation of the defendants would (if
such were possible) become her heirs should be made parties, or are
the brothers and sister who have accepted as heirs of their deceased
brother, J. E. Choppin, held for the purposes of this suit to represent
his entire succession and his entire interest in the property suffi-
ciently to make the title which would be conveyed under a licitation
sale in these proceedings a safe and valid one.

In the consideration of the subject we have not overlooked the
provisions of Article 1320 of the Civil Code, which is to the effect
that " it is not necessary to support the action of partition that the
co-heirs or the parties commencing it should be in actual possession
of the succession or of the thing to be divided, for among co-heirs
and co-proprietors it is *not the possession,* but the *ownership,* which is
the basis of the action."

There are two articles of the code which strike us as being entitled to some weight in reaching our conclusions. They are Articles 1381 and 1031.

They are as follows:

" If, after the partition, an heir appears whose death has been presumed, on account of his long absence, or whose right was not known, as if a second testament, unknown until then, should entitle him to inherit with the others, the first partition must be annulled and another must be made, of *all the property remaining in kind, and of the value of whatever has been consumed or alienated,* in order that he may have the share to which he is entitled" (Art. 1381).

" So long as the prescription of the right of accepting is not acquired against the heirs who have renounced, they have the faculty still to accept the succession, if it has not been accepted by other heirs—*without prejudice, however,* to rights which may have been acquired by third persons upon the property of the succession, either by prescription or *by lawful acts done with the administrator or curator of the vacant estate*" (Art. 1031).

It will be seen by Art. 1381 that there are some circumstances under which a sale made in partition proceedings, in which a person who actually had rights of ownership in the thing partitioned was not represented, would still hold good, and the rights of this unrepresented person would be restricted to a partition of the *property remaining in kind* and of the VALUE of whatever may have been consumed or alienated. The doctrine here announced is but the application of the doctrine of Art. 1031, under which subsequently known and asserted rights are made to be asserted in subordination to rights lawfully acquired under dealings prior to their own being presented and advanced.

The facts of the present case do not bring it directly under either of the articles cited, but they have none the less attracted our attention as we have stated. If there be any possible heirs to the succession of Mrs. Choppin they are not *known* so far as the record would go to show, and whilst we could not absolutely and positively say that there is no one who could or would accept that succession, what we do see of the succession impresses us with the moral conviction that there is no such heir, and no one who will ever do so. No rights of creditors of Mrs. Choppin's succession appear to be involved.

41

We are of the opinion that a sale made in the proceedings as they stand, with the parties as they are, would convey to a purchaser such a title as would protect him against eviction based upon any rights which might hereafter be advanced upon a claim in or upon the property subjected to be partitioned under and through Mrs. Choppin's succession.

We find a case (that of Buret vs. Lefebvre) decided by the French Court of Cassation in 1865 (Journal du Palais, 1865, p. 645), which, though its issues were much wider and broader than those in the present proceedings, bears some resemblance to it.

The facts of the case were these:

The Widow Collet died in 1842. The only persons who at that time presented themselves to receive her succession were Courgibet and Trésuffle, heirs in the paternal line; these made a donation of a portion of their rights to a Mrs. Croissant and a Miss Mouliés. On the 15th of June following there was a partition of the succession under which the real estate was allotted to Miss Mouliés. In 1852 Routiere and others, alleging themselves to be the sole heirs of the Widow Collet in the maternal line, brought a suit against the paternal heirs (NOT INCLUDING COURGIBET) asking a new partition of the succession or the restitution of one-half of the value of what had been allotted to them. In this suit they recovered from defendants by judgment under date of 16th of August, 1852, the sum of forty-four thousand francs.

In 1859 twenty-eight new heirs in the maternal line, majors and minors (the latter represented by their tutors) "revealed" themselves and brought a subaction of partition solely against the heirs of the maternal line who had figured in the suit of 1859 without even making the heirs of the paternal line parties. On the 19th of December, 1859, judgment was rendered in their favor.

In 1862 several of the maternal heirs who had obtained this last judgment brought a suit against the heirs of Widow Collet in the paternal line, having in view the definitive partition of all the movable and immovable property of the succession. The heirs so cited contended that the partition of 1842, having been made in good faith and executed since by the maternal line, was beyond attack.

In December, 1862, the lower court rendered a judgment condemning Courgibet to account to the maternal line for one-half of the amount he had received in the succession of Mrs. Collet, and then

(distinguishing between the majors and *minors*) rejected the prayer of the majors for a new partition, and reserved to the *minors*, or their tutors, the right to bring an action, when they should have been legally authorized to do so by a family meeting.

The Court of Cassation held, when the case was brought before it, that the plaintiffs (already bound by the judgment of 1852, executed as to themselves by reason of the subaction of partition granted upon their prayer in 1859) could not ask a new general partition; that they could not take advantage of the fact that Courgibet had not figured in the judgment of 1852; that all that the plaintiffs were entitled to would be to exact from Courgibet (who had not as yet paid anything back of the amount he had received) one-half of what he had received from the partition of 1842; that *especially were plaintiffs not permitted to have a licitation sale of the real estate which had been allotted in the first partition to Miss Monlies.*

The court held that the lower court was wrong *in discriminating between the majors and the minors*, stating that the *course pursued by the tutors* of the minors in asking a subpartition from those heirs in the maternal line (Routiere and others) who had recovered the forty-four thousand francs from the heirs in the paternal line *was the precise course which legally under the circumstances they should have taken.* In announcing its decision the court used the following language:

" Ces partages (those of 1842 and 1852) ainsi consommés de bonne foi devaient être considérés comme irrévocables contre toutes les parties qui étaient toutes majeures, au moins à l'égard des héritiers maternels, quoique saisis de plein droit de la succession ils n'étaient pas obliger de se porter héritiers, et jusqu'à ce qu'ils se fussent fait connaître en prenant qualité, la ligne maternelle avait été représentée vis-à-vis de l'autre ligne par ceux qui avaient fait valoir leur droit; les héritiers inconnus de l'autre ligne ne pouvaient plus désormais agir que contre leurs co-héritiers de la même ligne afin d'être admis au partage des valeurs recueillies a leur préjudice par ces derniers; c'est ce qu'ils ont fait lorsqu'en 1859 au nombre de 28 majeurs et mineurs—ces derniers représentés par leurs tuteurs—ils ont demandé un sous-partage contre les seuls héritiers de 'la ligne maternelle qui avaient figuré dans l'instance de 1852 sans même mettre en cause les héritiers paternels."

It will be seen that the French court placed two partitions, which

had been carried on in the absence of unknown parties having actually existing rights (which, however, had not been advanced or asserted), in the same situation that our code, under Art. 1381, places partitions which have been carried on under the erroneous idea that one of the co-heirs who was still living had died, or had been carried on in ignorance of the existence of a will which created rights in the property sought to be partitioned, and had given to the party in whose favor they were created a legal interest in the partition. It will be seen that in the second suit *two* out of *a great number* of *heirs* in *the maternal* line were *permitted quoad the heirs in the paternal* line to represent *the entire interest of the maternal line*—that the transfer of the real estate which had been made in the first partition to Miss Mouliés was maintained, and that the unknown or non-appearing heirs (even the minors) in the maternal line were restricted in their remedy to a suit against the co-heirs of their own line for their pro rata of what had been received by them, and to a contribution in money from one of the co-heirs in the paternal line, who had never paid back to any one the overplus he had received in the first partition.

In the case at bar finding that four of the presumptive heirs of J. E. Choppin have been duly cited and are in court; that they have permitted judgment to be rendered against themselves as such in the lower court, disclaiming neither there nor here their heirship; finding that certain known heirs of Mrs. Choppin have renounced, and that if there be any other heirs, they are unknown—at all events that they have certainly *not presented themselves*, and finding no rights of creditors involved, we are of the opinion that under the exceptional circumstances of this case the plaintiffs, as joint owners of the property, are justified and warranted in proceeding contradictorily against these four heirs of J. E. Choppin as representing his entire interest in the property, and in assuming that the apparent interest therein of Mrs. Choppin has been cast upon four heirs (now in court) by reason of accretion and of the indivisibility of their acceptance of the succession of their brother. In the examination of this case, that of Savage vs. Williams, 15 An. 252, has not escaped our notice. Should any claims be hereafter presented under a claim of right under and through Mrs. Choppin, the sale which will be made in this proceeding will none the less stand.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby affirmed.

Rehearing refused.