47 So.2d 681 (1950)
217 La. 901
Succession of TERTROU.
No. 39677.
Supreme Court of Louisiana.
June 30, 1950.
*682 Ernest J. Robin and Arthur V. Flotte, New Orleans, for appellants.
Ed. J. deVerges, Chas. I. Denechaud, Hugh M. Wilkinson, Felix J. Puig, Chas. W. Kehl, Fernando J. Cuquet, Jr., Azzo J. Plough, Martin E. Kranz, Pierre D. Olivier, Chaffe, McCall, Toler & Phillips and Leon Sarpy, all of New Orleans, for defendants-appellees.
LE BLANC, Justice.
On January 7, 1934, Miss Cora Marie Tertrou, a femme sole, executed a last will and testament in olographic form, in the following words and figures:
 "I Cora Marie Rose Tertrou of
 New Orleans State of Louisiana
 do make this my last will
 and testament revoking all
 others.
 I bequeath to the Charity
 Hospital of New Orleans La
 the sum of fifty thousand dollars.
First $50,000 in Gold Bonds
 for the maintenance of my
 tomb desire no further interments
 in said tomb but same
 to be hermetically sealed St.
 Louis Cemetery Esplanade
 Av.
 I bequeath to the Community
 Chest the sum of one thousand
Second dollars $1000 in Gold
 Bond. Madona Manoir one
 thousand dollars $1000 in
 Gold Bond Lighthouse for the
 blind one thousand dollars
 $1000 in Gold Bond. Maison
 Hospitaliere one thousand
 dollars $1000 in Gold Bond.
 N O Home for Incurable one
 thousand dollars $1000 in
 Gold Bond Salvation Army of
 N.O. one thousand dollars
 $1000 in Gold Bond. Little
 Sister of the Poor, one thousand
 dollars $1000 in Gold
 Bond Laharpe St. N.O. I bequeath
 to the City Park the
 sum of three thousand dollars
Third $3000 in Gold Bonds for a
 Bridge.
 I bequeath to the Delgado Art
 Museum the sum of one thousand
Fourth dollars $1000 in Gold
 Bond for a french oil tableau
 I bequeath to the Carmelite
 Convent on Rempart St. New
 Orleans, the sum of one thousand
Fifth dollars $1000 in Gold
 Bond for Masses for the repose
 of the soul of my dear
 mother, father brother, and
 me.
 I own no debs, and after paying
 all the legacies, if there is
Sixth any money left it is to be given
 to the Charity Hospital of
 New Orleans.
 I hereby appoint the Hibernia
Seventh National Bank in New Orlean
 my executor, with seizin
 This written and signed by me
 this seventh 7th day of January
 1934 in the City of New
 Orleans
 State of Louisiana
 Cora Marie Rose Tertrou"
On March 14, 1944, she executed a codicil in the same form but as it merely effected a change in the executor and appointed an attorney to settle her estate we are not concerned with that part of it in considering *683 and disposing of the issues that are presented in this proceeding.
Upon the will having been presented for probate to the district court by the executrix named therein, and an inventory of the estate having been made, various parties alleging themselves to be first cousins of the decedent and her nearest of kin and who would inherit her estate if there had been no will, appeared in court to oppose each and every bequest made in the will on various grounds set out in the petition filed by them in the succession proceedings. These parties were Mrs. Gabrielle Thomas, a femme sole, and Robert Thomas, residents of the Parish of St. Martin, Winnfield Scott Thomas, a resident of Port Arthur, Texas, Miss Laura Broussard and Miss Elise Broussard, femmes sole, residents of San Antonio, Texas and J. Maxime Queyrouze, a resident of the City of New Orleans.
The first, second, third, fourth and fifth bequests are attacked on the ground that they are legacies of a specific thing, to-wit: "gold bonds", and not demonstrative or general legacies and as the inventory taken of the decedent's estate lists only four gold bonds of $1000, whereas the number of such bonds bequeathed greatly exceed that amount, said legacies are lost if the specific things were disposed of by the testatrix during her lifetime. The first bequest, that is the one of $50,000 in gold bonds to the Charity Hospital of New Orleans, La., is also attacked on the ground that it is illegal, null and void as being contrary to the provisions of the Civil Code of Louisiana and to the laws of this State relating to trust estates. The sixth bequest, also to the Charity Hospital, is opposed on the ground that the language used therein is vague and not sufficiently definite to constitute a testamentary disposition.
All of the legatees appeared in response to the petition of opposition and each filed a separate answer in which the question whether the bequest made to each was of a specific thing was put at issue, each contending that in each case it was a bequest of a sum of money and each asked to be paid in cash in the event it could not receive a bond as had been bequeathed in the will. The Salvation Army also filed exceptions of no right or cause of action, of misjoinder and nonjoinder and of vagueness. These do not appear to have been acted on in the lower court and they are not urged before this Court.
The answer filed by the Charity Hospital will be discussed later as the opposition to its bequests, as was already noted, is based on the further ground that it is illegal, null and void as being in contravention of the laws of this State.
The testamentary executrix who had been cited also filed an answer in which she may be said to deny generally all the claims of the opponents to the various bequests and prays that their suit be dismissed.
After trial in the district court there was judgment upholding the will and ordering that all the bequests made therein be paid, after due course of administration, in cash, and further recognizing the Board of Administrators of Charity Hospital as universal legatee of the decedent.
While the case was pending in the district court, one of the opponents to the will, Robert Thomas, died and on motion duly made, his children and sole and only heirs, Harry Thomas, Robert Thomas, Jr., Clarence Thomas and Gertrude Thomas, wife of Larry Pritchard, were made parties plaintiff and authorized to prosecute the action in his stead. On motion made on their behalf, as well as that of the other parties plaintiff, they were granted an appeal to this Court which they have perfected.
The inventory taken in the succession proceedings reveals that the decedent left an estate which was appraised at $107,219.54. The largest item was cash in the sum of $68,568. The following bonds are listed: 4City of New Orleans, 4½% Serial Gold Bonds, of par value of $1000, 2U. S. Registered bonds, par value of $1000, 12State of Louisiana Highway bonds of the par value of $1000 and 10 Louisiana State Board of Education bonds of the par value of $1000; a total of 28 bonds with a total valuation of $35,211.52. In addition the inventory lists a certain number of loose coupons and government *684 checks, amounting to $70, cash and personal effects valued at $316.57, jewelry appraised at $973.50 and household furniture and effects, $2079.95.
As there are 28 bonds of $1000 each, there is therefore a sufficient number to discharge all legacies made in bonds of that denomination with the exception of the legacy to Charity Hospital. With regard to all legacies, however, it is contended that the bequests are all of "Gold Bonds," a specific thing, and there being only 4 of those so denominated on their face, those particular legacies which cannot be carried out are therefore to be considered as adeemed and lost.
A similar contention, although the testatrix did not refer to them as "gold" bonds in her will, was made in the case, Succession of Levy, 207 La. 1062, 22 So.2d 650. Like in this case the heirs were urging that the legacies were of a specific thing and argued that a legacy of a specific thing, so described as to identify it, is adeemed if the thing perishes during the life of the testator or if the legacy is tacitly revoked by some act on his part. To support their contention, Article 1691 of the Civil Code and Succession of Canton, 144 La. 113, 80 So. 218 were cited as authority. Further they had urged that a complete change in the character of the thing bequeathed, effected by the act of the testator, amounted to a revocation, and that partial revocation resulted from a sale by the testator of a part of the legacy, citing Article 1695, R.C.C., Succession of Batchelor, 48 La.Ann. 278, 19 So. 283 and Succession of McBurney, 162 La. 758, 111 So. 86. These contentions were all disposed of by the following statement which is quoted from the last paragraph of the opinion: "We have read all of the authorities cited by appellants but are of the opinion that, under the conclusion which we have reached, as herein above expressed, they are not applicable here. The trial judge was of the opinion that each of the legatees whose bequests were at issue was entitled to be paid in cash a sum of money equivalent to the face value of the bonds so bequeathed. In our opinion, this judgment is correct." [207 La. 1062. 22 So.2d 654]
The fact that the bonds in the present case were referred to merely as "Gold" bonds did not have the effect of making a specific thing the object of any particular legacy. "Gold bonds" is a generic term and does not apply to a particular bond. At the time the testatrix used the term when she was writing her will, and the way in which she used it, it is of a more general character than was the term used by the testatrix whose will was under investigation in Succession of Levy, supra. In the Levy will each legacy was of a bond of a certain designation. One of the legacies for example was: "To Beulah LevyI leaveThree City of New Orleans, La. 4% Public Improvement Bonds, Issue of 1900 @ $1000. = $3000.00". In the Tertrou will each legacy, taking one for example, reads: "I bequeath to the Community Chest the sum of one thousand dollars $1000 in Gold Bond." That was not a bequest of any particularly designated series of bonds but was rather of a sum of money which the testatrix had at the time invested in bonds. She was correct in referring to them for the most part as "gold bonds" because she actually had 4 bonds, so designated on their face, and of the remaining number, 12 of them were payable in gold coin of the United States of America, and those 16 were more than a sufficient number to pay each legacy except that of the Charity Hospital.
Her intention that the legacies could be paid in cash, as well as with a bond, is further indicated, in our opinion, by the fact that in the last bequest she made, she states that "if there is any money left", after paying all the legacies, "it is to be given to the Charity Hospital of New Orleans." In view of the fact that she had made a bequest of bonds to all the legatees it would seem that she used the words "bonds" and "money" indiscriminately and meant that all legacies were to be paid either in cash or with bonds.
We come now to a consideration of the next issue that is presented, that is the one with regard to the bequest to the Charity Hospital of $50,000 in gold bonds. As is to be noted that was a particular bequest of that sum to be used by the legatee for the *685 maintenance of the decedent's tomb in St. Louis Cemetery on Esplanade Avenue. This bequest, as has been stated before, was contested on the ground that it is a fidei commissa and as such prohibited by Article 1520 of the Civil Code and also that it is in contravention of the trust laws of this State.
In its answer to the article of the petition of the opponents in which the allegation of nullity of this bequest was made, the Charity Hospital merely denied same on the ground that the article contained only a conclusion of law. However the prayer of its answer reads as follows:
"WHEREFORE, Petitioner further prays that this Honorable Court shall adjudge and decree that the respondent, New Orleans Charity Hospital be recognized as universal legatee of the decedent, Miss Cora Tertrou, and that after payment of the various bequests set forth in the will and the payment of the expenses and legal charges, respondent be placed in possession of the residue of said estate consisting of real, personal and mixed property of whatever kind and nature and that the executrix herein be ordered and directed to deliver to said respondent the residue of the estate hereinabove referred to; respondent also prays for all general and equitable relief."
The prayer does not conflict with any averments of the answer and it is significant to observe that the respondent does not ask to have its particular legacy paid but on the contrary, prays to be recognized as the universal legatee of the decedent and that after payment of the bequests and of the expenses and legal charges, it be "placed in possession of the residue of the estate." The position taken by the Charity Hospital might be construed as an attempt to receive the residue of the decedent's estate, including the $50,000 under the particular legacy, without having to assume the obligation arising thereunder. But it could not derive such advantage if, as contended by counsel for the opponents, the prayer of its answer resulted in a renunciation of the particular legacy for in that event, under the terms of Article 1709 of the Civil Code, the particular legacy would devolve upon the legitimate heirs of the decedent.
Whilst it is true that Article 1017 of the Civil Code states that the renunciation of a succession is not presumed and provides that "it must be made expressly by public act before a notary, in presence of two witnesses", it has been held that it can also be made by some form of judicial declaration. Article 1017 of the Code, was held, in Carter v. Fowler, 33 La.Ann. 100, to have reference solely to extrajudicial renunciations, and was a provision in favor of the heirs of a succession to enable them to put in an authentic form the declaration by which they might be relieved from all liability for the debts of the succession. In Union National Bank v. Choppin, 46 La.Ann. 629, 15 So. 304, it is stated that the article is not exclusive of every other mode of renunciation and that a succession may be legally renounced by a judicial declaration to that effect. We are of the opinion that the prayer of the answer filed by the respondent, Charity Hospital, carried a renunciation of the particular legacy in its favor and that the legacy lapsed.
The question which next arises is, what becomes of the legacy, to whom shall it inure? The Charity Hospital asked that as universal legatee under the will it be placed in possession of the residue of the decedent's estate, but is it a universal legatee? We hold that it is not. Article 1606 of the Civil Code defines a universal legacy as "a testamentary disposition, by which the testator gives to one or several persons the whole of the property which he leaves at his decease." Obviously that definition does not apply. Whilst it may be that in certain cases the legatee of the remainder or the residue of an estate may be held to be a universal legatee, (for example, see Succession of Burnside, 35 La.Ann. 708, Succession of Kneipp, 172 La. 411, 134 So. 376) but the bequest in the cases so holding were for the whole of the remainder or residue of the estate whereas in this case the bequest is limited to the remainder of the decedent's money and it is shown by the inventory that there was other property remaining undisposed of.
If not to the Charity Hospital, to whom then does the legacy go? We find *686 the answer in Article 1709 of the Civil Code which provides that "except in the cases prescribed in the two preceding articles, every portion of the succession remaining undisposed of, either because the testator has not bequeathed it either to a legatee or to an instituted heir, or because the heir or the legatee has not been able, or has not been willing to accept it, shall devolve upon the legitimate heirs." (Italics ours) The two preceding articles referred to relate to conjoint legacies with which we are not concerned so we conclude that Article 1709 applies and that the lapsed legacy inures to the legitimate heirs of the decedent who, in this case, are the opponents appearing in this proceeding. See Compton v. Prescott, 12 Rob. 56; Turner v. Smith, 12 La. Ann. 417; Deshotels v. Soileau, 14 La.Ann. 745.
For the reasons stated it is ordered that the judgment appealed from, insofar as it recognized the legacy of $50,000 in gold bonds to the Charity Hospital at New Orleans, La., and ordered it paid, and insofar also as it recognized the said Charity Hospital at New Orleans, La., as the universal legatee under the last will and testament of the decedent, Miss Cora Tertrou, be and the same is hereby reversed, set aside and annulled and it is further ordered that there be judgment in favor of the opponents herein, Mrs. Gabrielle Thomas, Winnfield Scott Thomas, Miss Laura Broussard, Miss Elise Broussard, J. Maxime Queyrouze, Harry Thomas, Robert Thomas, Jr., Clarence Thomas and Mrs. Gertrude Thomas, wife of Larry Pritchard, recognizing them as the legitimate heirs of the said decedent, and as such entitled to receive and be paid the said legacy of $50,000 in bonds or cash, in the proportion of an undivided one-sixth to each of the following: Miss Gabrielle Thomas, Winnfield Scott Thomas, J. Maxime Queyrouze, Miss Laura Broussard and Miss Elise Broussard and an undivided one twenty-fourth to each of the following: Harry Thomas, Robert Thomas, Jr., Clarence Thomas and Mrs. Gertrude Thomas, wife of Larry Pritchard.
It is further ordered that the said opponents be recognized as the owners and placed in possession of, in the same proportion to each, all the jewelry, furniture, household and personal effects of the decedent, listed and described in the inventory taken of her estate.
It is further ordered that the judgment appealed from insofar as it recognized and ordered paid all legacies other than the particular legacy of $50,000 to the Charity Hospital at New Orleans, La. be and the same is hereby affirmed and further ordered that the said Charity Hospital at New Orleans, La., be recognized as legatee of all the money remaining in this estate after payment of all other legacies and the said $50,000 to the legitimate heirs of the decedent, and all costs of this proceeding.
HAWTHORNE, J., dissents in part and assigns written reasons.
HAWTHORNE, Justice (dissenting in part).
I do not agree with the majority opinion insofar as it holds that the prayer of the answer filed by the respondent, Charity Hospital, carried a renunciation of the particular legacy in its favor and that for this reason that legacy had lapsed. To me, there is no language in the prayer showing an express intention on the part of the hospital to renounce the legacy. In all other respects I agree with the majority opinion.