561 So.2d 58 (1990)
Marjorie Meyer ARSHT
v.
Elene Meyer DAVIS.
No. 89-C-2784.
Supreme Court of Louisiana.
April 30, 1990.
Concurring Opinion May 24, 1990.
Rehearing Denied May 24, 1990.
*59 Mark H. Tompkins, Plauche, Hartley & Tompkins, Lafayette, Joseph H. Stephens, Stephens, Wille & Jowers, for applicant.
John G. Torian, II, Steven C. Lanza, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, William Strain, Strain, Dennis, Ellis, Mayhall & Bates, Baton Rouge, for respondent.
Concurring Opinion of Justice Lemmon May 24, 1990.
SHORTESS, Justice Pro Tem.
Myrtle Levy Meyer, a widow and resident of Houston, Texas, died on January 21, 1987. She was survived by two daughters, Marjorie Meyer Arsht (Arsht), Applicant, and Elene Meyer Davis (Davis), Respondent. Both daughters reside in Texas. Mrs. Meyer died testate and her succession was opened in the State of Texas. Under the provisions of her Texas will, Mrs. Meyer's personal belongings were left to her two daughters in equal shares. The remainder of her property was willed one-half to Arsht as trustee, for the benefit of Applicant's children, and one-half to Davis, as trustee for the benefit of Respondent's children. The will also contained a "no contest" clause, revoking any bequest to a legatee or the legatee's descendants in the event such legatee contested the validity of the will or attempted to prevent any provision thereof from being carried out.[1] *60 Soon after the Texas succession was opened, ancillary proceedings were opened in Lafayette Parish, Louisiana, by Arsht. She was appointed Ancillary Testamentary-Executrix. Arsht also instituted the present action seeking to annul a transfer of an undivided interest in immovable property located in the State of Louisiana. The property had been inherited by Mrs. Meyer from I.B. Bendel and was comprised of an undivided 13.16037% interest in property located in Lafayette and neighboring parishes. By Act of Sale dated September 25, 1959, and hereinafter referred to as the 1959 transfer, Meyer sold her interest to Davis for the recited consideration of $2,500.00, reserving therefrom a production payment and leasing rights. In her petition, Arsht alleged that the 1959 transfer was a disguised donation and void for two reasons: (1) the transfer was not in authentic form, and (2) a usufruct was reserved in violation of LSA-C.C. art. 1533, prior to that article's amendment by Act 210 of 1974. In the alternative, if the donation was found to be valid, Arsht alleged that it should be collated into the succession pursuant to LSA-C.C. art. 1227, et seq.
Davis responded by filing exceptions of no right of action, lack of procedural capacity, and prescription. The trial court sustained the exceptions of no right of action and lack of procedural capacity, finding that Arsht had waived her rights to her forced portion, so no longer had an interest in seeking to annul the 1959 transfer or in demanding collation. The appellate court affirmed,[2] but a concurring opinion suggested that Arsht should have been given an opportunity to amend her petition and proceed as either Ancillary Testamentary Executrix of the Succession or Trustee of the trust created for the benefit of her children.[3]
Arsht first contests the lower court rulings interpreting the following language from her petition as a renunciation or waiver:
Petitioner is not asserting her rights as a forced heir to a portion individually of the Bendel Estate property because she supports and defends the Last Will and Codicil of the deceased and does not desire in any fashion to contest the validity thereof or to prevent any provisions thereof from being carried out.
From this language, the lower courts held that Arsht had renounced her rights to the forced portion and had waived any right of action to contest the will as she no longer had a justiciable legal interest in the matter.
"The renunciation of a succession is not presumed, it must be made expressly by public act before a notary, in the presence of two witnesses." LSA-C.C. art. 1017. This article, however, is not the exclusive method of renunciation. A succession may also be legally renounced by a judicial declaration to that effect. Union National Bank v. Choppin, 46 La.Ann. 629, 15 So. 304 (1894). The issue to be resolved is whether the paragraph above can be reasonably interpreted as a renunciation of Arsht's forced heir rights. Standing alone, the disputed language is too vague to be an unequivocal renunciation. When studied with the entire petition, it is clear that Arsht never intended to renounce her rights as a forced heir.
She reserved her rights as a forced heir in the prayer of her petition, where, in paragraph A thereof, Arsht specifically requested that the 1959 transfer be declared a donation in disguise, and therefore void.[4] She also requested that *61 the property be returned to the succession. This remedy is available only to forced heirs under LSA-C.C. art. 2444.
Art. 2444. Sale of immovables by parents to children, disguised donation.
The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.
The remedy provided by Louisiana Civil Code article 2444, which provides that sales of immovables may be attacked as disguised donations, operates only for the benefit of forced heirs. Webb v. Scott, 346 So.2d 765 (La.App. 1st Cir.1977).
Also, in paragraph B of her prayer, Arsht requested that the property so donated be collated and returned to the succession if the 1959 transfer was declared to be a valid donation. Collation is discussed in numerous codal articles, including the following.
Art. 1235 Persons obliged to collate; persons entitled to demand collation
The obligation of collating is confined to children or descendants succeeding to their fathers and mothers or other ascendants, whether ab intestato or by virtue of a testament.
Therefore this collation can not be demanded by any other heir, nor even by the legatees or creditors of the succession to which the collation is due.
Art. 1248 Advantages other than donation
The advantage which a father bestows upon his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, when a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, for [or] has spent money to improve his son's estate, all that is subject to collation.
Collation is a remedy available only to forced heirs. This remedy is the means by which the civil law seeks to enforce a relatively equal distribution of the ancestor's property among the descendant forced heirs. Schwegmann's Estate v. Schwegmann, 298 So.2d 795, appeal after remand, 344 So.2d 13 (La.1974).
By asserting rights belonging to a forced heir in the prayer of her petition, Arsht unequivocally reserved her status as a forced heir. It is clear that she never intended to renounce or waive her rights as a forced heir.
Davis wants us to interpret Arsht's petition as a waiver of her forced portion. She asserts and the appellate court held that the key consideration is whether or not Arsht would directly benefit from a successful resolution of this litigation.[5] It is argued that should Arsht prevail in this litigation, the subject property would devolve to her children and not to her. Davis asserts that since Arsht is pursuing this litigation on behalf of her children and since Arsht will not personally benefit should she prevail, she has no legal interest in this matter. Such an approach ignores the purpose of these remedies, which is to establish a relatively equal distribution of an ancestor's property among her heirs. The law contemplates a perfect equality among heirs and presumes that the ascendant intends equality among his *62 heirs. Succession of Gomez, 223 La. 859, 67 So.2d 156, 159 (1953).
In Montgomery v. Chaney, 13 La.Ann. 207, the court, after quoting article 2419 (now 2444), to the effect that sales made by parents to children may be attacked by forced heirs, if the latter can show them to have been disguised donations, or that the price was below one-fourth of the real value of the immovable sold, said:
`The foregoing article is a legislative recognition of the right to institute such action as the present. And, even where there is a price actually paid, exceeding one-fourth the value of the property sold, but, much below its fair value, and an advantage is thus, indirectly, sought to be given one heir over others, the law searches it out and compels the heirs to stand upon an equal footing. * * * The true questions are: Was the sale in question a real sale and was a fair price, at the time, actually paid? If those questions, or either of them are answered in the negative, collation is due by the pretended vendee, or the property comes into the mass to be distributed according to the rules laid down in the Code upon the subject of partition, unless to be found that the deceased declared the same to be intended as an advantage, in the matter already indicated.'Champagne v. Champagne, 125 La. 408, 51 So. 440, 444 (1910). (Emphasis added.) Whether Arsht will directly benefit from this matter is not our primary concern. The issue is whether Mrs. Meyer bestowed an advantage upon Davis prior to her death, and whether the deceased intended Davis have such as an extra portion. Arsht is the proper party to contest the 1959 transfer and as a forced heir, clearly has the right to litigate this matter.
The appellate court is reversed and respondent's exception of no right of action and lack of procedural capacity to proceed are hereby denied. This matter is remanded to the trial court for further proceedings in accordance with law.[6]
REVERSED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
The critical issue is whether a plaintiff who will not directly benefit from the relief demanded in the petition may nevertheless have the requisite legal interest to defeat an exception of no right of action.[1]
Arsht is not asserting her right as a forced heir to seek the forced portion of her mother's estate. She is seeking to have property returned to the estate by having the sale declared to be a donation in disguise or by demanding collation, rights which only a forced heir can assert. Because the Civil Code grants the right to bring actions for declaration of simulation or for collation only to forced heirs, the Code specifies that forced heirs (or their heirs or successors) have a right of action, whether or not the forced heir benefits directly from the actions.
NOTES
[1] Article III of Mrs. Meyer's last will and testament provides as follows:

If any beneficiary hereunder shall contest the probate or validity of this Will, or any provisions hereof, or shall institute or join in except as a party defendant, any proceeding to contest the validity of this Will or to prevent any provision hereof from being carried out in accordance with the terms hereof, regardless of whether or not such proceedings are instituted in good faith or with probable cause, then all benefits provided for such beneficiary and such beneficiary's descendants are revoked and such benefits shall pass to the other beneficiaries of this Will, other than such beneficiary and such beneficiary's descendants, in the proportion that the share of each such other beneficiary bears to the total of my estate. If all of the beneficiaries join in such contest or proceedings, then such benefits shall pass to those persons other than the persons joining in such contest who are living at the time of my death and who would have been my heirs had the person or persons contesting my Will and their descendants died immediately before me. Each benefit conferred herein is made on the condition precedent that the beneficiary shall accept and agree to all of the provisions of this will, and the provisions of this Article are an essential part of each and every benefit.
[2] Succession of Myrtle Levy Meyer, 550 So.2d 372 (La.App. 3d Cir.1989).
[3] In fact, such pleadings have been filed. On September 22, 1989, Applicant, in her capacity as Ancillary Testamentary Executrix, filed a Petition to Set Aside Transfer of Myrtle Levy Meyer to Elene Meyer Davis As a Pure Simulation.
[4] A litigant's intent to accept or renounce may be contained in the prayer of a petition. Succession of Tertrou, 217 La. 901, 47 So.2d 681 (1950). Although the preceding statement of law is correct, we question whether there was an express intent to renounce in Tertrou, which found that the failure to mention a particular legacy by Charity Hospital of New Orleans in its petition, in conjunction with the following language, was a renunciation:

WHEREFORE, Petitioner further prays that this Honorable Court shall adjudge and decree that the respondent, New Orleans Charity Hospital be recognized as universal legatee of the decedent, Miss Cora Tertrou, and that after payment of the various bequests act forth in the will and the payment of the expenses and legal charges, respondent be placed in possession of the residue of said estate consisting of real, personal and mixed property of whatever kind and nature and that the executrix herein be ordered and directed to deliver to said respondent the residue of the estate hereinabove referred to; respondent also prays for all general and equitable relief.
Justice Hawthorne, in his dissent, accurately stated that there was no language in the prayer showing an express intention on the part of Charity to renounce the particular legacy. The renunciation of a succession must be made expressly. LSA-C.C. art. 1017.
[5] Succession of Myrtle Levy Meyer, 550 So.2d 372, 376 (La.App. 3rd Cir.1989).
[6] As noted earlier, the record indicates that Applicant has filed pleadings as Ancillary Testamentary Executrix in this matter.
[1] Under La.Code Civ.Proc. art. 927 the exception of no right of action is directed at the "interest in the plaintiff to institute the suit".