No. 11,873.

SUCCESSION OF DR. JAMES C. BATCHELOR.

The testator had bequeathed a promissory note to certain legatees named. The note, after the date of the will, was collected at the instance of the testator, and the amount placed to his credit. The legacy was of a note and not of a sum of money. There was revocation of the legacy.

An ink line was drawn on the will, across the particular legacy; if drawn by the testator, as there is reason for presuming, it furnishes additional proof of intention to revoke the testament.

APPEAL from the Civil District Court for the Parish of Orleans. Theard J.

Farrar, Jonas & Kruttschnitt and Fred. Adolph for Executor, Appellee.

Brice & Rainold for Tutor, Appellant.

Argued and submitted January 25, 1896.
Opinion handed down February 10, 1896.

The opinion of the court was delivered by

BREAUX, J. In 1893 Dr. Batchelor died in Washington, leaving a will, viz.:

"In case of my death it is my desire that the G. Master take charge of my effects and oblige by using one of these bonds to pay my funeral expenses; let it be plain. I own the vault in A. Home [☐] Tomb. I am not aware of owing any debts, except those of kindness; give the other to my sister, Mrs. Jeannette Hutchings, of Montgomery, Ala.; also my bal. in bank, for which I leave a check for my balance in Canal Bank. By this means I hope to avoid the necessity of opening a succession. *Give the two thousand seven hundred and fifty dollar note (Smith's) to G. W. Stem, of Adams street, Carrollton, to divide, and share and share alike, among his five children, to be kept at interent and given to them as they marry or go into business.* My watch and chain to my God Son, J. B. Stem (one of said children). My books in lumber room to G. L. Library. The trunks and metal box in my office to be sent to the S. C. 33, 433 Third St., Washington. My small desk (in my room) to Minerva,

one of G. W. Stem's children. My Pho. Album to my sister, and the enclosed envelope to G. W. Stem and my best regards to all friends."

"Do as you'd be done by."

"2–7–90.                    (Sig.)      J. C. BATCHELOR."

This will was in an envelope and bore the superscription: "Papers of Dr. Batchelor to be opened only in case of his death or his order. Left with his sister."

Through the words in the will printed in italics, ink lines were drawn.

Part of the time prior to the death of the testator the will was in possession of his sister. At the time of his death it was in the trunk of the deceased, in the envelope sealed. It was taken from the trunk and subsequently handed to the executor, opened.

The note bequeathed was placed in the hands of an attorney with power to collect.

On May, 1891, he writes to his attorney: "I wish it collected, because I propose to invest this amount in the new bonds of the lodge;" and subsequently he writes: "I leave it to you to sell the note at par and invest $2500."

The note was collected a few weeks prior to his death. When advised of its collection by letter he expressed a desire to let the attorney retain the money.

The will was probated and letters issued to Mr. Charles F. Buck as testamentary executor. The executor in due course of settlement of the succession filed an account which was satisfactory to the widow and to the only son of the deceased. Prior to the filing of this account, George W. Stem, tutor named in the will, as legatee, had brought suit against the executor, claiming the amount of the note (referred to in the will as the Smith note). He, in addition, opposed the account for the reason set forth in his petition.

The following are the defences interposed to the claim for this legacy:

1. That the thing bequeathed had perished before the death of the testator.

2. That the erasure in the will had been made and approved by the testator within the meaning of the legislator, whereby the legacy had been revoked.

3. That the clause in question is a prohibited *fidei commissum* and therefore null and void.

4. That if the legacy is of a specific thing and valid, it is valid only to the extent to which the thing belonged to the deceased; it being property of the community.

Something was said in argument about the date of the will; whether it was dated on the seventh of the second month or the second day of the seventh month of the year 90.

That question is not propounded by the pleadings and is therefore not before us for decision.

. Taking up the first proposition. It can not be denied, the testament is the property of the testator; it can not be a title for any one; he can do with it as he pleases and dispose of his property as he chooses, within the restrictions imposed by law.

The revocation may be made *aut verbis aut facta*. *Verbis* by substituting a new will or by private act manifesting sufficiently the intention to revoke. *Facta* by destroying the instrument or by destroying the thing bequeathed. A thing is regarded as having perished, not only when it has been destroyed, but also when it has been changed into another thing or substance. The substance is not so much the material of which it is constituted as the form which characterizes it *in esse* and which differences it from other things.

Coin Delisle de Donation et Testaments, Art. 1042 of the C. N.

Thus, by selling the property specifically bequeathed the testator manifests a change of intention which operates as a revocation of the legacy; for the property, in so far as he was concerned, has changed its character from the thing sold to the price stipulated. This revocation by the mere fact of selling can be avoided only by the expressed intention of the testator; evidenced as required to substitute the price for the thing bequeathed. The rule of tacit revocation by sales applies to notes bequeathed due to the testator; that are collected at his (testator's) instance. The requirement in regard to intention, to substitute the money collected for the notes, also applies as in sales. In each, the sale or the collection of the notes, the thing bequeathed has undergone an absolute change in so far as relates to title and the character of the property owned.

The principle has been illustrated as follows:

If the testator has bequeathed wool with which he subsequently made cloth, the legacy is extinguished, and it is the same if having

bequeathed boards he used them in making an armoir or in the construction of a ship.    The thing bequeathed is regarded as no longer *in esse*, the legacy is revoked.    Duranton, Vol. 9, p. 488.

Again by the same commentator: If the testator bequeathed to Paul the claim due him by Peter, and he exacted or simply received payment, the legacy is revoked or destroyed.  Nothing is bequeathed. Par. 462.

The note bequeathed was extinguished by payment.

Our attention was directed at the bar to the effect of novation; that novation, it was said, did not have a revoking effect, even under the Code of Napoleon.   Code of Fuzier-Herman, Art. 1038, Notes 7 and 9.   The limited number of our books enable us to consult only one of the decisions to which Fuzier-Herman refers in support of his note.

That decision does not sustain that view of the question.

Laurent, upon that subject, propounds the following:   What does the legacy of a note include ?   He answers: The testator does not bequeath a sum of money;  he bequeaths a right against the maker. If he demands the payment and it is paid, can the legatee collect the cash received ?   As a question of law, the answer must be in the negative.   But the question of law is dominated by the intention of the testator as it was made manifest in case of 29th June, 1830, Dalloz No. 4351.

Laurent, Vol. 14, par. 166.   " What we have said of payment applies novation."   *Ib.*, par. 290.

Continuing, he says: Doctrine and jurisprudence admit that Art. 1042 (1700 of the C. C. of La.) applies by analogy.   The legacy perishes when it is extinguished by one of the causes which puts an end to the obligation.   If a claim bequeathed be paid it no longer exists, and there is an end of that particular legacy.   But adds: The intention, however, of the testator may have been that the legatee should receive the amount collected.   The intention should govern. *Voluntas facit legem* in this instance.   It becomes a question of facts. *Ib.*, par. 290.

After a close examination, we have not found any evidence of intention of the testator to bequeath the money collected on the note. What we have said in regard to the effect of payment is true of novation.   Par. 290, second paragraph.

Demolombe, commenting on Art. 1038 of the C. N. (1695 of the La. Codes), Vol. 22, p. 200, said (our translation) :

It is thus that the conveyance by the testator of the claim bequeathed carries revocation. As much should be said of the collection by him of the claim, particularly if he demanded payment, for by this there is revocation of the legacy and the destruction of the thing bequeathed. The claim was placed in the hands of an attorney for collection, and the attorney testified that the probability of collecting it afforded to the testator some satisfaction. About two months prior to this testator's death he was advised of the collection. He said nothing in regard to the legatees, and did not manifest the intention that they should receive the cash.

It is urged in support of the legatees' demand that the testator has never received the money; the thing bequeathed remained a debt due to the testator.

That it became a debt due by the attorney to him; that it underwent a change of form, not of substance, and its identity was not destroyed.

We think it sufficient answer that the return of the receipted note, of which the testator was fully advised, was his act. The money paid was his property, and as such was part of the succes-ion, to be disposed of without reference to the note collected.

"It is in safe, hands," was in substance the testator's utterance when he was informed by his attorney of the payment.

In Succession of Irwin, 63 An. 72, the conclusion of the court was in regard to the exchange by the testator of a claim bequeathed based on an indebtedness for the bonds of his debtor. The testator has not parted with his claim. The debtor remained and the "original obligation remained and underwent no material modification save in the form of the evidence of the same.'" The court adds: "It was an exchange by itself for itself."

Here, there was no exchange; the debt was paid and the note was canceled. The case in hand is similar on this point to Hepp vs. Lafonta's Executors, 4 N. S. 428, 429. The legacy "was not of a sum of money, but of a contract or debt; it was not perfect until the moment the testator died, and then it took place as to what was due." This legacy did not include the amount the testator had collected on the contract or debt bequeathed.

We incline to think that some weight, as showing the intention, should be given to the fact that the ink lines were drawn across the words bequeathing the (Smith) note.

There is divergence between the Louisiana Civil Code and the Code Napoleon on the subject of revocation in some respects, and in others none.   Under similar provisions of the latter to the former, French commentators have announced that the approval of erasures in testaments may be shown by testimony outside of the will.   Demolombe, Vol. 22, par. 252, p. 217; Laurent, Vol. 13, par. 188.

Parol is admissible to prove that the erasures were made by the testator. *Ib.* 268.

In Louisiana the rule in regard to presumptive revocation does not absolutely confine the proof to approval written on the face of the will.   Succession of Muh, 35 An. 394.

We are not particularly concerned with the rule at this time further than to state that it is certainly significant; the words covered by the pen lines exactly correspond with the changes we think were intended by the testator when the note was collected and placed to his credit by his attorney.   Our conclusion renders it unnecessary to decide the other questions raised.

We think the judgment should be affirmed.

It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed.