(77 South. 889)

No. 21308.

## Succession of WALKER.

(June 30, 1917.   On Rehearing, Feb. 25, 1918.)

*(Syllabus by Editorial Staff.)*

1. WILLS ⬯302(6) — SUFFICIENCY OF EVIDENCE—GENUINENESS OF WILL.

Evidence *held* to show that a will, purporting to be in the handwriting of the testator and consisting of a single sentence written on a slip of paper, was genuine.

2. WILLS ⬯107—FORM AND CONTENTS—ERASURES.

Rev. Civ. Code, art. 1589, provides that erasures not approved by the testator are considered as not made, and that if the erasures are so made as to render it impossible to distinguish the words covered by them it shall be left to the discretion of the judge to declare if he consider them important, and in this case only to decree the nullity of the testament. *Held,* that in a will reading, "To P. I leave all I die possessed of," an erasure over which the word "die" was written was of no importance, and furnished no reason for annulling the will.

3. WILLS ⬯302(4) — GENUINENESS — ERASURES—INFERENCES.

If it is true that erasures and interlineations in a will give rise to an inference that they were made with a view to rewriting the instrument, such inference was overcome, where a will consisted of a single short sentence, by the opposite inference that the testator would have rewritten the will at once had he desired to rewrite it.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Proceeding to probate an alleged will of Dr. William Ernest Walker. From a judgment sustaining the opposition to the probate of the will, the proponent appeals. Judgment set aside and case remanded.

Edward Rightor and Eugene J. McGivney, both of New Orleans, for appellant. Merrick, Gensler & Schwarz and Buck, Walshe & Buck, all of New Orleans, for appellees.

PROVOSTY, J. [1] The brother and two sisters of the decedent oppose the probate of the will, of which the following is a photographic copy:

A large number of the signatures of Dr. Walker and a good deal of his handwriting are in the record. In going over them and constantly referring to them, in following the witnesses in their testimony with reference to them, a picture of Dr. Walker's mode of writing has necessarily formed in our minds, and the result is that we have become convinced this will is genuine. Especially in the signature there is a family resemblance which to our minds is unmistakable. Dr. Walker, we are informed by the record, did

not have a collegiate education, and did only such writing as he could not well avoid doing or have others do for him. His writing shows it. It is irregular in the sense of multiform. A word or even a letter in flowing hand is followed or preceded by a word or letter in cramped hand. And this same peculiarity, so striking and characteristic in Dr. Walker's handwriting, manifests itself everywhere in this will. The change of the "r" in Walker from the "v" form to the other form, and the erasure at the place where the word "die" has been written, which impress some of the witnesses as proof conclusive of forgery, impress us just the other way. This will, if a forgery, was the work of a skillful penman, to whom the rewriting of the instrument would have involved so very little work that it is inconceivable he or she would not have rewritten the whole instrument if any change in it had been thought to be advisable. On the other hand, Dr. Walker is shown to have been a man of peculiar ways, one of which was this very one of erasing words or letters. Another peculiarity of his, finding expression in this will, was that of using slips of paper for writing instead of sheets.

Dr. Walker was an eccentric man of retired habits, mixing little with the world, of few acquaintances, by calling an orthodontist and dental facial orthopedist, or specialist on malformation of the mouth, absorbed in his work, taking little interest in things outside of it, devoting his time to it and to reading in connection with it. Most of his waking hours outside of his work were spent at the house of the legatee's mother, with whom he would read Christian Science books. For 12 years the legatee was his secretary, assistant, office companion, and, at any rate latterly, friend and adviser. When the illness of which he died came upon him, he left his own house and went to the house of the legatee's mother to be taken care of.

The legatee - and her mother testify to having found this will in his pocketbook. His housekeeper testifies to having seen in this pocketbook the small envelope in which the will is said to have been inclosed when found. This housekeeper, an old lady, is shown, on cross-examination, to have been entirely in error when she testified that she could identify the doctor's handwriting, and so is the legatee's mother. But what of this?

Both Miss Patin, the legatee, and Mrs. Hill her mother testify to the will having been found on Sunday, and also testify to its having been found on Wednesday. The attention of these witnesses was not called to this contradiction in their testimony; and nothing shows that they attached any importance to the point of the day of the week on which the discovery was made. When cross-examined on the point of on what day of the week the discovery was made, both testified that it was on Wednesday.

[2] In connection with the fact that the word "die" was written over an erasure, the opponents contend that because of this erasure the will must be decreed to be null under article 1589 of the Code, which reads:

"Erasures not approved by the testator are considered as not made, and words added by the hand of another as not written.
"If the erasures are so made as to render it impossible to distinguish the words covered by them, it shall be left to the discretion of the judge to declare if he consider them important, and in this case only to decree the nullity of the testament."

As we are unable to conceive how the word or letters, if any, that were erased in this case could have been of any importance, we can see no reason for annulling the will because of this erasure.

[3] It is also argued that erasures and interlineations in a will give rise to an inference that they were made with a view to the rewriting of the instrument, and a dictum, taken from Jarman on Wills, to be found in

Succession of Muh, 35 La. Ann. 402, 48 Am. Rep. 242, is cited to that effect. Such inference, if, indeed, a legitimate one, would be overcome in this case by the opposite one that Dr. Walker would have rewritten this will at once if he had desired to rewrite it, it being so very short. Why put off rewriting a will of this brevity?

The judgment appealed from is set aside, and the opposition to the probate of the will in question is rejected and dismissed, and the case is remanded, to be proceeded with according to law.

SOMMERVILLE and LECHE, JJ., take no part.

### On Rehearing.

SOMMERVILLE, J. A careful re-examination and consideration of the evidence in this case confirms us in the opinion hereinbefore expressed.

It is therefore ordered, adjudged, and decreed that the former opinion handed down in this case be reinstated and that it now be made the opinion of the court in the case.