ROGERS, Justice..
 

 Mrs. Eve Christine Butterworth, widow of John Dibert, died at her domicile, in the City of New Orleans, on August 27, 1938, leaving a will and two codicils executed in olographic form, disposing of her large estate. Her succession was opened in the Civil District Court for the Parish of Orleans, and the will and codicils were proved and registered according to law. Marcus Walker was appointed testamentary executor and qualified as such. He was also named trustee of various trusts created by the decedent, among which was one for Bruce Butter-worth, her nephew. Mr. Walker qualified as trustee in each case.
 

 The trust set up for Bruce Butterworth in the will reads as follows:
 

 “I hereby create a trust for -Alfegft Bruce Butterworth, the trust shall consist of the following $100,000 in bonds taken from my estate, and selected in the discretion of my executor and my trustee— my shares of stock in the Lutcher & Moore Cypress Lumber Company — Lutcher Louisiana — my stock in Dibert, Stark & Cypress Company Brown Lumber miib —Donner Louisiana **1í-«-* *V1.T
 
 l -rri A ,r% ¿I
 
 Í J-^ ^ i.
 
 U.XUW m
 
 uanym- *UUUB-
 

 The residuary legatees are the Board of Administrators of the Charity Hospital at New Orleans, the Roman Catholic Church of the Diocese of New Orleans (for account of Hope Haven Farm), Hotel Dieu, and the Eye, Ear, Nose and Throat Hospital.
 

 In the bequest in trust made to Bruce Butterworth, double ink lines are drawn through the words, “also my undivided' interest in timber lands,” but the words themselves are clearly legible.
 

 Marcus Walker, trustee, acting under section 94 of Act 81 of 1938, known as the Trust Estates Act, took a rule against each of the residuary legatees and Bruce Butterworth, beneficiary under the trust, to show cause why the above quoted words in the will, through each of which ink lines are drawn, should not be regarded as an erasure, not approved by the testatrix, and why the trustee should not take over and administer for the beneficiary under the trust an undivided interest in certain described timber lands.
 

 All the respondents filed answers and the matter was heard in due course. The court below resolved the issue in favor of the residuary legatees and dismissed the rule. The court decreed that the erasure of the words, “also my undivided interest
 
 *122
 
 in timber lands,” was approved by the testatrix in the manner prescribed by law, and that neither Bruce Butterworth nor Marcus Walker, trustee, is entitled to receive any of the timber lands described in the rule, and that the lands are included in the bequest to ■ the residuary legatees. From this judgment Marcus Walker, as trustee, and Bruce Butterworth, as legatee, have appealed.
 

 In their answer to the rule taken by Marcus Walker, trustee, the residuary legatees set up that the trustee, as the executor, and Bruce Butterworth, as a legatee, are estopped to contest the disposition by the testatrix of her undivided interest in timber lands, because they propounded the will and testified as witnesses at its probate, and because, further, the executor in filing a rule to fix inheritance taxes excluded the land.
 

 The plea of estoppel is not good. Neither the trustee nor the legatee set up in the probate proceeding their present contention, and they were not obliged to do so. Aubert v. Aubert, 6 La.Ann. 104; Leonard v. Corrie, 10 La.Ann. 78; Succession of McDonogh, 18 La.Ann. 419, 444; Gueydan v. Montagne, 109 La. 38, 33 So. 61. The rule taken by the executor was to fix inheritance taxes on certain special legacies. All necessary parties, including the residuary legatees, were cited. The rule was taken without prejudice to the rights of the State or of the succession. A plea of estoppel is not favored in law and should not be maintained except in clear cases. It arises only where the party invoking it has been led to change his position to his injury by the party against whom the plea is urged. Louisiana Oil Refining Corp. v. Williams, 170 La. 218, 127 So. 606. The action taken without prejudice by the executor, for the purpose of fixing and discharging inheritance taxes due on special legacies, did not cause any alteration in the position of the residuary legatees, nor in any manner affect their rights.
 

 An olographic will is one that is entirely written, dated and signed by the testator. It is subject to no other form, and may be made anywhere, even out of the State. Civ. Code, art. 1588. Under Article 1589 of the Civil Code, erasures in an olographic will not approved by the testator are considered as not made, and words added by the hand of another as not written.
 

 It is not disputed that Mrs. Dibert’s will complies with the formalities prescribed by Article 1588, but it is disputed that the erasures appearing in the will were approved by the testatrix in the manner required by Article 1589. Specifically, the question presented for decision is whether the mk lines drawn through the words, “also my undivided interest in timber lands,” constitute an erasure approved by the testatrix within the provisions of the codal article. If they do, the timber lands will go to the residuary legatees. If they do not, the lands will go to the trustee to be administered for the beneficiary under the trust created by the will.
 

 The will of Mrs. Dibert was presented to the Court for probate in a sealed envelope, across the flap of which Mrs. Dibert
 
 *124
 
 had signed her name, “Eva Christine Butterworth Dibert,” and on the other side of which she had written over her signature the words, “My last will.” This envelope was found in the bank box of the deceased by the notary who was appointed by the Court to search for a will. The will was presented for probate on the petition of Marcus Walker and Bruce Butterworth, who both testified that the instrument, in its entirety, was written, dated and signed by the testatrix. In computing the amount due the State for inheritance taxes, the timber lands involved in this suit were not considered as forming part of the trust estate created for Bruce Butterworth and they were not included in the computation. In these circumstances and with these physical facts shown by the record, the residuary legatees, in support of their contention that the erasures were made and approved by the testatrix as required by Article 1589 of the Civil Code, produced, as a witness, Albert S. Osborne, a handwriting expert of international reputation. In his testimony, which was admitted over the objection of counsel for Bruce Butter-worth, Mr. Osborne stated that the seven words in the will of Mrs. Dibert under review were marked out and cancelled by the testatrix. In support of his statement, the witness pointed out that the marks exhibited certain characteristics which, because of their frequent repetition, should be considered as habitual. For this reason and for other reasons given in his testimony, Mr. Osborne unhesitatingly expressed the opinion that the drawing of the lines through the seven words in question was done by Mrs. Dibert herself before she signed the will.
 

 No countervailing expert testimony was produced by the legatee, Bruce Butterworth. It is argued on his behalf that this class of evidence being so conjectural and unreliable has no probative force. Nevertheless, the testimony of;an expert can not be arbitrarily rejected. Like the testimony of other witnesses, it should be considered by the Court and accorded the weight to which it is entitled in view of the facts and the common knowledge of mankind. Succession of McDonogh, 18 La.Ann. 419, 444; Succession of Stewart, 51 La.Ann. 1553, 26 So. 460; Succession of Lefort, 139 La. 51, 71 So. 215, Ann.Cas. 1917E, 769. In the Succession of Stewart, this Court expressly held that one of the methods of proving handwriting in cases of disputed wills was by comparison of the handwriting and by experts. This ruling was approved in the Succession of Lefort. If it be said that the ruling loses its force when it is sought to be applied to the case of erasures effected by drawing lines through dispositions in a will, certainly it can not be gainsaid that expert testimony in the case of erasures may be considered in corroboration of positive testimony and surrounding circumstances tending to establish the authenticity of the erasures.
 

 The salient facts, some of which are corroborated by the testimony of the expert, conclusively show that it was the intention of the testatrix that the timber lands should not be included in the trust created for Bruce Butterworth, and that the
 
 *126
 
 erasure of the lands from the bequest was made and approved by her.
 

 The words evincing the bequest were struck out with double ink lines, the ink used for the purpose being the same kind of ink that was used by the testatrix in writing her will. The lines also exhibit an unusual characteristic which is manifest in the words of the will, viz., a peculiar curve •appearing at the ends of the lines which likewise appears at the ends of the letters forming the words. The will was placed in an envelope, which was sealed, and the testatrix signed her name across the flap and wrote the words, “My last will,” and her name on the other side of the envelope. The envelope was found in this condition in the bank box of the testatrix and was presented for probate unopened, just as it had been placed in the box.
 

 The plaintiff contends that even if it was a fact that the testatrix erased the bequest of the timber lands to him, her act would be ineffective to annul the legacy, because she failed to approve the erasure in writing. On the other hand, the defendants contend that there is no law requiring that the approval of the testatrix should have been written on the will, or that it should have been in writing at all; that the proven facts amount to a demonstration that the erasures in the will were actually approved by the testatrix.
 

 The contention of the parties involves the construction of Article 1589 of the Civil Code. That article reads in full as fol-, lows:
 

 “Erasures not approved by the testator are considered as not made, and words added by the hand of another as not written.
 

 “If the erasures are so made as to render it impossible to distinguish the words covered by them, it shall be left to the discretion of the judge to declare, if he considers them important, and in this case only to decree the nullity of the testament.”
 

 It will be observed that there is no provision in Article 1589 requiring that the approval referred to should be written on the will itself, or should be in writing at all.In this respect the article differs materially from Article 1588, its immediate predecessor, which provides that an olographic will must be entirely written, dated and signed by the testator himself. Based upon this essential difference between the two articles, the argument on behalf of the defendants is that while the language of Article 1588 leaves no room for doubt or construction, that an olographic will must be made in writing by the testator, the language of Article 1589 does not expressly require that the approval of the erasure should be made in writing by the testator.
 

 An examination of the several codes which were in effect at various times in this State discloses that there is no article in the Code of 1808 corresponding to Article 1589 as it appears in the present Civil Code. A reference to the projet of the Civil Code of 1825, Louisiana Legal Archives, vol. 1, p. 214, in which Article 1589 was incorporated, develops the fact that the commissioners engaged in drafting the code made the following notation at the foot of the proposed new article, viz., “The object of this article is to prevent the mutilation
 
 *128
 
 of testaments before they are presented for probate.”
 

 The only formalities prescribed for the validity of an olographic will are those set forth in Article 1588. The will may be deposited anywhere and with any person. Unauthorized persons may have access to the will, depending upon the diligence exhibited and care exercised by the testator. Since, as shown by the comment of the commissioners, the primary purpose of Article 1589 is to prevent the mutilation of an olographic will before it is presented for probate, it would seem to be clear that the article applies with particular force to those cases where the testator has not used the same care in preserving and protecting his will from possible mutilation by third persons as was used by Mrs. Dibert.
 

 There are a number of decisions in this Court in which Article 1589 is discussed and construed, but only two decisions have any bearing on the question at issue in this case. Those are: Succession of Batchelor, 48 La.Ann. 278, 19 So. 283, and Succession of Muh, 35 La.Ann. 394, 48 Am.Rep. 242. In both cases the Court stated ex industria that the erasures in an olographic will need not be approved in writing by the testator and need not have his approval written on the face of the will itself.
 

 The will, in the Succession of Batchelor [48 La.Ann. 278, 19 So. 284], was enclosed in an envelope which bore the superscription: “Papers of Dr. Batchelor to be opened only in case of his death or his order. Left with his sister.” The will was in the possession of the testator’s sister for only a portion of the time elapsing prior to his death. At the time of his death, the envelope containing the will was found in his trunk. The envelope, when found, was sealed. When subsequently handed to the executor, it was opened. The testator had bequeathed a promissory note to a certain named legatee. A few weeks pri- or to his death, the note was collected at the instance of the testator and the proceeds were held by his attorney for his account. At the time the will was found, ink lines had been drawn across the particular legacy. In the suit brought by the legatee under the bequest claiming the amount of the note, the executor set up the defense that the note had perished before the death of the testator and that the erasures appearing in the will had been made and approved by the testator within the meaning of the legislative intent. The Court found that the note had been collected, thereby changing the character of the claim from a note to cash. The Court then said:
 

 “We incline to think that some weight, as showing intention, should be given to the fact that the ink lines were drawn across the words bequeathing the Smith note.
 

 “There is divergence between the Louisiana Civil Code and the Code Napoleon on the subject of revocation in some respects, and in others none. Under similar provisions of the latter to the former, French commentators have announced that the approval of erasures in testaments may be shown by testimony outside of the will. 22 Demolombe, p. 217, par. 252; 13 Laurent, par. 188.
 

 
 *130
 
 “Parol is admissible to prove that the erasures were made by the testator. 22 Demolombe, p. 268.
 

 “In Louisiana the rule in regard to presumptive revocation does not absolutely confine the proof to approval written on the face of the will. Succession of Miih, 35 La.Ann. 394.”
 

 The Succession of Muh was a case in which the notary appointed to search for a will found one in a locked drawer in the bedroom of the deceased, in an envelope marked: “Ceci est mon Testament Olograph Pour étre overt aprés mon Décés.” The will was written on a sheet of legal cap, the writing covering three and a half pages of the sheet. The will commences: “Ceci est mon Testament Olograph,” and then follow more than twenty legacies. All the legacies, except four, had been erased. by a line of ink drawn through them, although the words could be read. The signature was covered with ink, a minute inspection of which revealed the name to those who knew it already. There were certain notations made in the margin of the will by the testator which the Court found indicated that he was reading the will over with the view of making another. The Court further found that there was other and stronger internal evidence showing that the testator had made the erasures with his own hand. The Court reached the conclusion that the intention of the testator to annul the will could not reasonably be doubted. “The painstaking and elaborate defacing and blotting out the signature was the act which, to his apprehension, destroyed it as a will,” said the Court. The Court further said: “The obliteration of the names of the executors was almost as complete, but the legacies that were not intended to be repeated had simply an ink line drawn through them, and the sentences that were untouched received marginal additions as memoranda, or were left entire for use in copying.” After referring to Article 1691 providing that a revocation of a will by the act of a testator may be express or tacit, general or particular, and rejecting the argument that the act by which a testamentary disposition is revoked must be made by a written instrument having all the elements of a valid will, the Court declared:
 

 “A similar perversion of Art. 1589 (1582) is urged. By that Article erasures not approved by the testator are considered as not made, and it is insisted that this ap-’ plies to the erased signature equally as to erased legacies. No particular method of approval is specified, nor does it seem essential that approval shall be indicated by writing, in which respect our Code differs from the English statute of Wills. There is no indication of the testator’s approval of the erasures other than the approval which erasure by his own hand manifests. But it is apparent the Article is not treating of the erasure of a signature to a will. The erasures, which are considered not made if not approved, are those which change or strike out parts or clauses of a paper recognized as an existing will, not that part, the erasure of which would destroy it as a will. Erasures of clauses in the body of the will affect only the dispositions erased. Erasure of the signature strikes at the existence of the instrument as a will.”
 

 
 *132
 
 Thus it will appear that in the Succession of Muh this Court has expressly held that, as respects erasures appearing in a will, “no particular method of approval is specified, nor does it seem essential that approval shall be indicated by writing, in which respect our Code differs from the English statute of Wills.” And in the Succession of Batchelor, this Court has also expressly held that “parol is admissible to prove that the erasures were made by the testator.”
 

 In' support of his contention, the plaintiff strongly relies on the decision of this Court in the Succession of Hill, 47 La.Ann. 329, 16 So. 819, 821. That was a suit by collateral heirs to annul a will, on the ground that as the result of certain acts, which were alleged to show a change of intention on the part of the testatrix, the will had been tacitly revoked. The question for decision involved the application of Article 1691 of the Civil Code prescribing the method of revoking wills by the act of the. testator, and not an interpretation of Article 1589 of the Civil Code relative to erasures of bequests contained in a will. This Court held that none of the acts or declarations of Mrs. Hill came within the requirements of the tacit revocation expressed in the Code. The Court also discussed at some length the decision in the Succession of Muh, pointing out that “the facts in Succession of Muh related to erasures made by the testator.” After making this statement, the Court reviewed the decision in the Succession of Muh and apparently- approved the conclusion reached therein.
 

 Another case cited, and strongly relied on by plaintiff, is the Succession of Tallieu, 180 La. 257, 156 So. 345, 348. When the succession of Miss Tallieu was opened, a petition was presented asking that a search be made for her will. A notary was appointed to make the search. He reported that he had found what purported to be either a will or a rough draft of a will, written on a tablet, in a box at the residence of the decedent, which tablet he presented intact with his report to the Court. When the document was offered for probate, it was attacked by the parties who had obtained the order to search for a will. The ground of their attack was that the document was not, and was not intended to be, a will since the testatrix had defaced it on each page in such a way as to clearly show that she did not intend it to be her will.
 

 Miss Tallieu had drawn pencil lines only through certain of the bequests, leaving other bequests intact. Her signature and the concluding paragraphs of the document were not defaced at all. The Court held that, as limited by the issue raised in the petition of plaintiffs, it. was not warranted in declaring that the document under review was not intended by Miss Tallieu to be her last will and testament. The decision is not appropriate to this case. There the Court was not dealing with the approval or non-approval of erasures appearing in the will but with the alleged revoca^ tion of the will. In referring to the erasures, the Court expressly said: “There is no question here that the erasures or marks found on the document were not approved by the testatrix, and, as we have already
 
 *134
 
 stated, they are so lightly drawn that it is very easy to distinguish the words covered by all of them.” In the present case the internal evidence of the will itself, the surrounding circumstances, and the testimony of the expert unite in establishing the fact that the erasure was made and approved by the testatrix.
 

 In the course of the argument supporting his contention, plaintiff referred to a number of decisions of this Court. The cases are: Hollingshead v. Sturgis, 21 La.Ann. 450; Succession of Walker, 142 La. 955, 77 So. 889; Succession of Beird, 145 La. 756, 82 So. 881, 6 A.L.R. 1452; Succession of Dyer, 155 La. 265, 99 So. 214; Succession of Rusha, 158 La. 74, 103 So. 515; Succession of Maginnis, 158 La. 815, 104 So. 726; Succession of Fitzhugh, 170 La. 122, 127 So. 386; Succession of Feitel, 187 La. 596, 175 So. 72; Succession of Patterson, 188 La. 635, 177 So. 692; and Soileau v. Ortego, 189 La. 713, 180 So. 496. None of them is controlling on the issue involved here.
 

 In the Hollingshead case, it was held that an ordinary letter not clothed with the formalities required for a testament did not operate as a revocation of a testament. Soileau v. Ortego and Successions of Rusha, Maginnis, Fitzhugh, and Feitel, are authority merely for the proposition that a will, in order to be valid, must comply with the statutory requirements. These cases are not appropriate here because the erasure complained of by the plaintiff was made in accordance with the requirements of the codal article.
 

 In the Succession of Patterson, this Court held that an instrument propounded as a will was neither testamentary in form nor in substance. ' The Court, however, did consider certain collateral evidence offered for the purpose of showing that the instrument was intended as a will, but found that the evidence was insufficient for the purpose. In the Succession of Beird, the Court merely affirmed the doctrine that the sufficiency of the date of a will must be determined from its face. In the Succession of Walker, the Court held that the word “die,” written over an erasure, was of no importance and offered no reason for annulling the will. The Court further held that if erasures and interlineations in a will give rise to an inference that they were made with a view of rewriting the instrument, such inference was overcome, where a will consisted of a single short sentence, by the opposite inference that the testator would have rewritten the will at once had he desired to rewrite it.
 

 The Succession of Dyer involved an olographic will executed in proper form to which was attached a postscript that was neither dated nor signed. This Court refused to give effect to the postscript because it lacked a date and a signature.
 

 Plaintiff also cites the case of Messi v. Frechede, 113 La. 679, 37 So. 600. That case involved interlineations which were made by the vendee in a deed of sale. The vendor disclaimed all knowledge of the interlineations and because of his disclaimer and other surrounding circumstances, the Court, in holding that the vendee was in bad faith, applied the principle of law that
 
 *136
 
 the burden of proof rested upon a party-relying on a written instrument to account satisfactorily for any interlineation operating as a substantial change in the effect of the instrument.
 

 For the reasons assigned, the judgment appealed, from is -affirmed.
 

 O’NIELL, C. J., dissents.
 

 PONDER, J., absent.