HAWTHORNE, Justice.
 

 Mrs. Luona Schwing Levy, widow of Maurice Levy, died in the Parish of Tangipahoa on September 2, 1943, leaving an olographic will which we deem it necessary to quote in full, as follows:
 

 “Last Will and Testament
 

 “I Mrs. Maurice Levy nee Luona Prescott Ava Schwing of the City of Hammond, State of La. being of sound mind and body and having no forced heirs, do hereby make and publish this as and for my last will and Testament, hereby revoking and making void, every and all other will or wills by me at any time heretofore made
 

 “To Beulah Levy — I leave — Three City of N. O. La. 4% Public Improvement Bonds, Issue of 1900
 
 @
 
 $1000.00 = $3000.00
 

 “To Marquita Levy — I leave — Three City of N. O. La. 4% Public Improvement Bonds, Issue of 1900 @ $1000.00 = $3000.00
 

 “To Josephine Hammond — I leave — Three City of N. O. La 4% Public Improvement Bonds, Issue of 1900 @ $1000.00 — $3000.00
 

 “To Violet Keller Young — I leave — Two City of N. O. La 4% Public Improvement Bonds, Issue of 1900
 
 @
 
 $1000.00 $2000.00
 

 “To Marguerite Keller — I leave — Two City of N. O. La 4% Public Improvement Bonds, Issue of 1900 (§> $1000.00 = $2000.00
 

 “To Mrs. C. C. Keller — I leave — Two City of N. O. La 4% Public Improvement Bonds, Issue of 1900 @ $1000.00 = $2000.00
 

 “To Mrs. Rose Levy Hammond — I leave— Three City of N. O. La 4% Public Improvement Bonds, Issue of 1900
 
 @
 
 $1000.00 — $3000.00
 

 “To Mrs. E. C. Glenn — I leave — Two City of N. O. La 4% Public Improvement Bonds, Issue of 1900 @ $1000.00 = $2000.00
 

 “To Ellen Glenn Lightsey — I leave — One City of N. O. La 4% Public Improvement Bond, Issue of 1900 @ $1000.00 = $1000.00
 

 
 *1065
 
 “To Bessie Glenn — I leave — Two City of N. O. La.
 
 4Vz%
 
 Serial Gold Bonds, Series of 1917 @ $1000.00 = $2000.00
 

 “To Sophie Block — I leave — Two City of N. O. La
 
 4V2%
 
 Serial Gold Bonds, Series of 1917 @ $1000.00 — $2000.00
 

 “I leave One City of N. O. La 4^% Serial Gold Bond, Series 1917 @ $1000.00 To be devided between my God-children —Ole Dellucky — Gertrude Eells — Maurice Morgan and William Maurice Cronan and my Grand Niece Annie Lou Bergeron = $1000.00
 

 “I leave, One City of N. O. La.
 
 ty2%
 
 Serial Gold Bond, Series 1917 @ $1000.00 To be devided between five Mrs. James H. Burns — Miss Ria Schwing — my friend Mrs. A. J. Mahoney — My niece Marie Schwing and Mr. and Mrs. W. K. Eells = $1000.00
 

 “To Mrs. A. J. Wiltz — I leave One City of N. O. La
 
 4y2%
 
 Serial Gold Bond, Series 1917
 
 @
 
 $1000.00 $1000.00
 

 “I leave One City of N. O. La 4^% Serial Gold Bond, Series 1917 @ $1000.00 for Masses for the repose of my soul, to be said as soon as possible = $1000.00
 

 “It is my wish that One City of N. O.
 
 iVz%
 
 Serial Gold Bond, Series 1927 @ $1000.00 be kept at interest. This interest to be used every year, for the upkeep of my plot and for Masses, to be said for the repose of Maurice’s and my souls $1000.00
 

 “X leave one City of N. O. La. Serial Gold Bond
 
 @
 
 $1000.00 to be kept at interest. This interest, to be used every year for upkeep of the graves of my family in Amelia, La. and for Masses to be said for the repose of souls of my Parents, Brothers and Sisters — $1000.00
 

 “To the Holy Ghost Church of Hammond,
 

 La. I leave, One City of N. O. La.
 
 4%%
 

 Serial Gold Bond Series 1917 @ $1000.00 $1000.00 “After all my just debts have been paid, such as Funeral, Doctor, Perpetual care of my grave in Metairie Cemetery and afore said legacies, I leave the rest of my estate to my beloved Mother. At her death, it is to be devided equelly, between my sister Mrs. Thomas L Cronan, my Brothers, Eddie Schwing and Horace Schwing and my deceased Brothers, Percy Schwing’s and Oliver Schwing’s families and my deceased sister Mrs. Wall’s children.
 

 “I hereby appoint my brothers — Horace D. Schwing and Eddie P. Schwing; executors o£ this my last Will and Testament with full power of seizin and without, bond
 

 “This last will has been entirely written, dated and signed in this my handwriting on this, the Fifth day of August in the year of Our Lord 1936
 

 “(Sgd) Mrs. Maurice Levy
 

 “Nee Luona Presoot Aya Schwing”
 

 The heirs of Mrs. Levy instituted this suit against the legatees named in said will, alleging, among other things, that the testatrix had been married but once, and then to Maurice Levy, who predeceased her; that the testatrix acquired by last will and testament all the property left by the said Maurice Levy, and that neither she nor Maurice Levy had any forced heirs at the respective dates of their deaths. These heirs further allege that they oppose each and every bequest made in said will for the reason that the bonds described therein were not among the assets of the testatrix at the time of her death, and that none of said bonds was listed in the inventory made in her succession, with the exception of one City of New Orleans 4%% Serial Gold Bond, Series 1927, which bond the testatrix provided in her will was to be kept at interest and the interest used every year for the upkeep of her cemetery plot and for masses to be said for the repose of her soul and that of her husband;
 

 Further attacks are made on this will on the ground that certain bequests were in the nature of fidei commissa.
 

 The heirs in their petition attacking this will pray that a rule issue herein, directed to and against each legatee in person or corporation named in said last will and testament, to show cause why the legacies pur
 
 *1067
 
 ported to be due each respectively thereunder should not be declared null and/or impossible of fulfillment and therefore void, and why said last will and testament as a whole should not be declared null and void and of no effect, and why they, as the legal heirs of the deceased testatrix, should not be recognized and sent into possession of the entire estate of Mrs. Luona Levy.
 

 In answer to the heirs’ petition, various defenses were urged, among these being the following: (1) That, in the event the bonds were not in the possession of the testatrix at the time of her death, said bequests were alternative bequests, that is, that it was the intention of the testatrix to give the bonds or the sum of money set forth after each bequest, and (2) that the intent of the testatrix to make disposition of said estate in favor of the legatees rather than to her heirs, her brothers, sisters, nieces, and nephews, is clear, and that it would be destructive of this intent not to divide her estate in the manner in which she directed in the will.
 

 It is pleaded in the alternative (1) that the will clearly indicates that the money was given instead of the bonds, and (2) that under the laws of this state a disposition must be understood in the sense in which it can have effect rather than in one in which it can have none, and that, in order to give the will effect, each legatee should be paid in cash the sum set forth after the bequest.
 

 It is to be noted from the record and the briefs filed in this case that the contention that certain bequests made by the testatrix were in the nature of the fidei commissa has been abandoned and is no longer an ■issue in this case, and that the bequests for masses to be said and the bequest to the Holy Ghost 'Church of Hammond, Louisiana, have been acquiesced in by all parties, and, further, that the legacies to Mrs. A. J. Wiltz and Mrs. Rose Levy Hammond have lapsed due to the fact that these parties died before the death of the testatrix, and that her mother, Mrs. Joseph Schwing, having also died before the testatrix, the bequest to her also lapsed.
 

 The lower court rendered judgment in favor of the legatees whose bequests were still at issue, declaring the last will and testament in question to be good and valid as to them, and recognizing such legatees to be entitled to be paid in cash the sums set forth opposite their respective names in said will, said.sums being the face value of the total amount of bonds bequeathed to each.
 

 From this judgment a devolutive and suspensive appeal was granted to this court.
 

 No bonds of the nature described in the bequests still at issue were found among the assets left by the testatrix, nor were they listed in the inventory of the property belonging to her estate. It is true that bonds of the same series and for the same amount were listed in the assets of Maurice Levy, deceased husband of the testatrix, and were' acquired by her in his succession proceedings, which proceedings are in the record. However, the record does not show what disposition was made of these bonds.
 

 Since the bonds were not found among the assets of Mrs. Levy’s estate, it is
 
 *1069
 
 necessary for this court to interpret this will, and in doing so we must search for the true intention of the testatrix as deducible from the whole language of the instrument which she has framed to express her last wishes, and, ‘if there is obscurity or doubt as to her meaning in any particular clause or bequest, we must bring other ■clauses or bequests into juxtaposition with it, and deduce, if possible, from all, an interpretation which will make them all harmonize. Articles 1712, 1713, Revised Civil Code; Lebeau v. Trudeau, 10 La.Ann. 164; Succession of Wilcox, 165 La. 803, 116 So. 192; Succession of Serres, 136 La. 531, 67 So. 356; Succession of Provost, 190 La. 30, 181 So. 802; Succession of Lacoume, 205 La. 511, 17 So.2d 726.
 

 It is to be noted that in nearly every bequest in the will now being considered, after a description of bonds of a certain kind, we find the sign “@” (meaning “at”), followed by the face value of each bond, •and thereafter the equal sign and immediately following a sum of money representing the total face value of the bonds as described in said bequest. However, in the bequests to three named individuals the ■equal marks were omitted, we think, inadvertently.
 

 A reading of the will as set out herein shows that each of these bequests was framed in similar language, for example:
 

 "To Marquita Levy — I leave — Three City of N. O. La. 4% Public Improvement Bonds, Issue of 1900 @ $1000.00 = $3000.00"
 

 It is our opinion that it was the true intent of the testatrix, as deducible 'from the whole language of the testament, to give to each legatee whose bequest is still at issue the bonds described in each bequest or a sum of money in cash equivalent to the total face value of the bonds bequeathed. The following bequests forcibly impress in our minds that this was the true intent of the testatrix:
 

 "I leave One City of N. O. La 4^% Serial Gold Bond, Series 1917 @ $1000.00 for Masses for the repose of my soul, to be said as soon as possible = $1000.00"
 

 "I leave one City of N. O. La. Serial Gold Bond @ $1000.00 to be kept at interest. This' interest, to be used every year for upkeep of the graves of my family in Amelia, La. and for Masses to be said for the repose of souls of my Parents, Brothers and Sisters = $1000.00"
 

 No bonds of the nature described in the above bequests were found among the assets of the decedent, nor were any listed in her inventory.
 

 These bequests clearly indicate to us that the testatrix, in writing this will, fully realized the certainty of death, and that she was deeply religious and sincerely believed in life hereafter and was vitally concerned for the repose of her soul and the souls of her loved ones, her parents, brothers, and sisters. These bequests show beyond any doubt that it was the intention of the testatrix to leave the bonds as described or their equivalent in cash to the face value thereof, for the reason that she specifically provided therein for the saying of masses for her own soul and for those of her relatives, and provided for the upkeep of her family burial plot. We cannot construe the fact that the bonds were not among her assets to mean that she intended that these bequests should fall, thereby not’ provid
 
 *1071
 
 ing a sum of money from her estate for the saying of masses and for the upkeep of the last resting places of her loved ones. On the contrary, it was her intention that these bequests be carried out after her death, pursuant to the provisions of the will.
 

 It is to be noted that in the bequest of one $1,000 City of New Orleans 4%% Serial Gold Bond, Series of 1917, for masses for the repose of her soul, the testament provides that 'the same are to be said as soon as possible, and the only way in which this bequest could be carried out would be to sell or deliver the bond in question, in the event it was found among the assets of her estate, or, in the alternative, in the event that it was not so found, to pay from her estate the equivalent in cash of the face value thereof. And, under the facts in this case, no one can be heard to say that, simply and only because’ the bond was not among her assets, it was her intention that this bequest should fall and that her request that masses be said for her soul “as soon as possible” should not be complied with, as stipulated in her last will and testament.
 

 Since we have reached the conclusion that it was the clear intention of the testatrix to leave the bonds or the cash equivalent of their face value under the bequests set forth hereinabove, then it is also true, and must follow, that the same intention must apply to the bequests made to the individual legatees whose bequests are here at issue, for an examination of these bequests shows that they were made in similar form, language, and signs.
 

 We are of the opinion that the intention of the testatrix in this case can be ascertained without departing from the proper signification of the terms of the testament, as above expressed. However, even if this were not true, her intention may be ascertained by recourse to all circumstances which may aid in the discovery of such intention, under the authority of Article 1715 of the Revised Civil Code, which reads as follows: “When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.”
 

 The record in this case discloses that Maurice Levy, the husband of the testatrix, Mrs. Luona Schwing Levy, died on December 12, 1928, leaving no forced heirs and disposing of all of his property by last will and testament in favor of his wife, all of which property had been acquired during the marriage and belonged to the community of acquets and gains which existed between them. The total property belonging to the community of acquets and gains had an inventoried value in excess of $75,-000, one-half of which belonged to the widow in community, the testatrix in this case, and the other half she acquired by virtue of said last will and testament.
 

 Mrs. Luona Schwing Levy departed this life on September 2, 1943, leaving no forced heirs. Her estate had a net inventoried value in excess of $60,000.
 

 The total amount of the bequests made to individual legatees in the last will and testament of Mrs. Levy was $28,000. All except a few of these bequests were made
 
 *1073
 
 to sisters, nephews, nieces, and other close relatives of her deceased husband. She left $3,000 for the purpose of having masses said and for the upkeep of certain cemetery plots, and $1,000 to the Holy Ghost Catholic Church of Hammond, Louisiana— a total of $4,000. The balance of her estate, $28,000, was left under the terms of the will in equal portions to her sister, Mrs. Thomas L. Cronan; her brothers, Eddie Schwing and Horace Schwing; the families of her deceased brothers, Percy Schwing and Oliver Schwing, and the children of her deceased sister, Mrs. Nora Wall. These are the parties who instituted this suit attacking the will and praying to be recognized as the sole and only legal heirs of the deceased testatrix.
 

 It is thus to be noted that Mrs. Luona Schwing Levy bequeathed approximately $28,000 to the relatives of her deceased husband and a like amount to her own relatives and legal heirs. The rest of her estate, $4,000, was disposed of in her will for the purposes above set forth. It thus appears that it was the intention of Mrs. Levy to divide her estate equally, as nearly as possible, between the relatives of her deceased husband, Maurice Levy, and her own relatives, and this is what she attempted to do, and did do. It is therefore evident that it was her intention that each of the legatees named in said will was to receive the bonds bequeathed or was to benefit to the amount of the total face value of the bonds so bequeathed.
 

 The heirs, appellants, take the position that these legacies are legacies of a specific thing, and contend that a legacy of a specific thing, so described as to identify it, is adeemed if the thing perishes during the life of the testator or if the legacy is tacitly revoked by some act of the testator. In support of this contention, they cite Article 1691 of the Revised Civil Code, and Succession of Canton, 144 La. 113, 80 So. 218. They further call our attention to the provision of the law that a complete change in the character of the thing bequeathed, effected by the act of the testator, amounts to a tacit revocation, and that partial revocation results from a sale by the testator of a part of the legacy, and they cite Article 1695 of the Revised Civil Code; Succession of Batchelor, 48 La.Ann. 278, 19 So. 283, and Succession of McBurney, 162 La. 758, 111 So. 86.
 

 We have read all of the authorities cited by appellants but are of the opinion that, under the conclusion which we have reached, as hereinabove expressed, they are not applicable here. The trial judge was of the opinion that each of the legatees whose bequests were at issue was entitled to be paid in cash a sum of money equivalent to the face value of the bonds so bequeathed. In our opinion, this judgment is correct.
 

 The judgment appealed from is therefore affirmed and made the final judgment of this court; all costs to be paid by appellants.
 

 HIGGINS, J., takes no part.