ARMSTRONG, Judge.
Floyd and Ann Anderson appeal the dismissal of their petition for declaratory judgment in which they sought to be named the universal legatees of the residual estate of their uncle, Med Mitcham.
Med Mitcham executed an olographic will dated September 5, 1977.[1] The testator died on November 1, 1984, unmarried and *347 without ascendants or decendants. He was survived by collateral heirs or their representatives, one of whom was his nephew, Floyd Anderson, Sr., a resident of Inverness, Mississippi. Donald Mitcham, the testator’s brother, was named testamentary executor.
The will was admitted to probate on November 26, 1984. The undisputed specific legacies were subsequently approved and delivered, including $37,000 to Donald Mitc-ham as named legatee of 25% of the estate.
Following the opening of the succession Floyd and Ann Anderson alleged that the will specifically named them as residual legatees entitled to the balance of the estate. The executor maintained that the decedent was intestate as to that portion of his estate not disposed of by specific bequests, thus requiring the residue of the estate to be divided proportionally among the collaterals, including the Andersons and Donald Mitcham.
The Andersons filed for declaratory judgment. After a trial on the merits the trial court dismissed the Andersons’ petition and held that the collateral heirs were entitled to their representative shares of the balance of the decedent’s estate.
On appeal the petitioners contend that the following passage in the will expresses the testator’s intent to bequeath them the residue of his estate:
To my nephew Floyd Stevens Anderson Sr. and his wife ann—
1 Pair Marble and Dare’ Warriors (To be Willed to Patti Anderson on their deaths.
The balance of my estate:.
The executor maintains that it was never the intention of the testator to will the balance of his estate to the Andersons. In the alternative, the executor argues that alterations to the will rendered the residue portion intestate.
The trial court concluded that the testator had originally intended to bequeath his estate to the Andersons but changed his mind due to a resentment toward them which developed after 1980. The court cited the testator’s refusal to visit the Andersons in Inverness, Mississippi after 1980 and his refusal to be buried in Inverness as support for its conclusion. (The testator was buried in the family plot in Hazlehurst, Mississippi.)
The court further concluded that the insertion of a colon in the disputed passage after the will was executed on September 5, 1977, could only mean that the testator revoked his intent to bequeath the balance of his estate to the Andersons because he intended to list an alternate legatee in their stead. Because the testator failed to actually name a substitute residual beneficiary the court declared that portion of the estate to be intestate. We disagree.
We are well aware that in the absence of manifest error, an appellate court should not disturb the factual finding of *348 the trial court where there is evidence before the trier of fact which upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for its finding. Canter v. Koehring, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). However, having reviewed the evidence and testimony before us, we must conclude that such error exists in the instant case.
“In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.” LSA-C.C.Art. 1712. “A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.” LSA-C.C.Art. 1713. If possible, wills should be read as to lead to testacy, not intestacy. Succession of Carter, 332 So.2d 439 (La.1976).
The will consists of four handwritten pages and is divided into seven parts separated by Roman numerals and distinctive spacing. Section I contains a listing of specific legacies of cash, stock, personal articles and antiques which the testator willed to his friends and relatives. Sections II through YII contain instructions as to the appointment of the executor, the disposition of the testator’s business and the testator’s desires as to funeral arrangements.
The specific bequests in Section I are numbered la to 22a and end about Va down from the top of page three. The remainder of page three was left blank, possibly to accomodate any additional specific bequests which the testator may have later wished to make. Page four begins with the unnumbered disputed bequest passage. This passage, along with the short instructions that follow, ends Section I containing the individual bequests.
Alterations were made to the will at some unknown time and date. (The parties apparently agree that the testator himself made the changes, however evidence was not produced at trial to this effect.) A different pen and different color ink were used to accomplish the changes. Among the notable alterations was the insertion of a colon in the disputed passage. Also, in another portion of the will, the phrase, “My nephew Floyd Stevens Anderson Sr. to make arrangements” was crossed out. This phrase was preceded by the unaltered phrase “It is my desire to be buried at Inverness Mississippi.”
It is undisputed that prior to 1980 Med Mitcham enjoyed a close and loving relationship with the Andersons. Mitcham lived in Floyd’s family home in Inverness, Mississippi as a young man and considered Floyd his favorite nephew. Even after moving to New Orleans, Mitcham spent every Thanksgiving or Christmas until 1980 with Floyd and his family.
Donald Mitcham testified that the testator became upset with the Andersons in 1980 because they had over reacted to the death of their pet dog and because “they always had a hand out for money.” According to Donald, Med thereafter refused to return to Inverness. Based upon this hearsay statement and the lining out of the phrase authorizing Floyd to make the funeral arrangements, the trial court concluded that the testator altered his will sometime after 1980 and “... irrevocably and definitively severed all social relationships with [the Andersons].”
We find that this interpretation completely ignores the testimony of Floyd Anderson and Dr. Mark Parker, the testator’s lifelong friend and physician. Dr. Parker, who had never met Floyd Anderson, testified that Med had expressed to him on several occasions his intent to leave his estate to Floyd. He also testified that Med’s health began to seriously decline after 1979 to such an extent that in subsequent years he could no longer conduct his business nor care for himself. He stated that although Med did not visit the Andersons in Inverness after 1980, it was because of his physicial discomfort in travelling rather than the result of a change in the relationship between Med and his nephew. Med had instructed Dr. Parker during this period that the Andersons were to be contacted in case of an emergency regarding his health. Dr. *349 Parker did in fact contact the Andersons periodically subsequent to 1980 to report on Med’s medical status.
An examination of the will itself shows that the trial court incorrectly concluded that the testator evidenced his displeasure with the Andersons by refusing to be buried in Inverness where the Andersons lived. Although Floyd was no longer able to make the funeral arrangements, the will clearly retains Mitcham’s desire to be buried in Inverness rather than in the family plot in Hazlehurst, Mississippi.
The will also reflects that the specific legacies to Floyd, Ann and Patti Anderson remained unchanged in spite of the alterations.
Having reviewed the evidence and testimony, we find that the death of the Anderson’s pet dog, the failure of a seriously ill man to visit Inverness after 1980, and the change in who was to make funeral arrangements is an insufficient factual basis to conclude that the testator so resented the Andersons that he changed his mind about leaving them the balance of his estate. An appellate court is bound to interpret the will as it is written and give effect to what the testator said, not to what anyone might speculate that the testator intended. Succession of Kearl, 440 So.2d 179 (La.App. 4th Cir.1983).
Central to the resolution of this case is the determination of what meaning, if any, should be given to the insertion of the colon in the phrase “The balance of my estate:.”
Both grammerians who testified at trial agreed that a colon usually anticipates a listing of some kind and that it is rarely used as an end-stop such as a period. Dr. Cresap Watson testified that without the colon the phrase “The balance of my estate.” made perfect sense when the will was read as a whole, i.e. the Andersons were to receive the balance of the estate. However, because no listing followed, the insertion of the colon was meaningless unless read as an end-stop.
Dr. Leslie Perelman, the appellees’ expert, testified that the colon could only mean that a listing of some kind would follow, thus demonstrating the testator’s intent to name additional legatees. Both experts agreed that although the testator was meticulous and careful in his other business writings, the will itself demonstrated an unorthodox and idiosyncratic writing style which contained many errors in grammar, punctuation and sentence structure.
“When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.” LSA C.C.Art. 1715. If any ambiguity or obscurity exists as to the testator’s intent with regard to a particular clause or bequest, other clauses or bequests must be considered along with the ambiguous clause or provision which harmonizes the whole. Succession of Levy, 207 La. 1062, 22 So.2d 650 (1945); Sidney v. Frosch, 413 So.2d 966 (La.App. 3rd Cir.1982). Finally, it is well settled that the proponents of partial intestacy of an estate must bear the evidentiary burden of establishing that intention on the part of the testator. Succession of Grusich, 329 So.2d 483 (La.App. 4th Cir.1976).
In examining the disputed passage the grammarians found that it was consistent with the literary and grammatical style used by the testator in bequests la to 22a. In these bequests the testator first designated the legatee then assigned the legacy through the use of a phrase or an incomplete sentence. The individual legacies were separated by distinctive spacing and numbering. The legacy to the Andersons follows this pattern.
The testator meticulously listed each of his collateral heirs and carefully described their particular legacies, e.g. his brother, Donald, was given 25% of the estate, but his sister, Madie, was only given $1.00. The will obviously reflects the testator’s intent to dispose of his entire estate. It strains logic to conclude that he intended 75% of the estate to fall intestate thus causing a further distribution among heirs for whom he had already specifically provided.
*350 Whether the testator inserted the colon as an end-stop or as an anticipatory mark indicating a listing, the fact remains that he did not list additional heirs to the balance of the estate. The colon could just as well “anticipate” the list of instructions that follow rather than non-named heirs. If the testator wished to change his will regarding the balance of his estate, he did not accomplish it through this instrument.
We agree with the trial court that the will as originally written left the balance of the estate to the Andersons. We do not agree that the colon created an ambiguity that could not be resolved from the will as a whole.
Accordingly, the judgment of the Civil District Court, Parish of Orleans is reversed. It is ordered adjudged and decreed that there be declaratory judgment in favor of Floyd and Ann Anderson naming them heirs to the balance of Med Mitcham’s estate.
REVERSED.

. Page 1
LAST WILL AND TESTAMENT
1. I, Med (Percy) Mitcham being of sound mind and memory, do on this 5th day of September 1977, make this my last will and testament, revoking all others. Having no children, I give and bequeath all of my worldly possessions to my relatives and friends as follows who are living at my date of death—
la—
To Mrs. Marsha Tomberlin, Andalusia, ala. My undivided interest in the 1956 Lincoln Continental — The antique caned bergere with bolster—
lb—
To Dr Charles G. Tomberlin, Andalusia, Ala. The antique black amour and 1 pair of Marble warriors (book-ends).
To Dr A. Mark Parker — The antique Inlaid Imprise English bar — 1 Pair baccarat lamps on d’are’ bases with special gold scallop shades — 1 single baccarat lamp on d’are’ base, with custom shade.
3a.
To my sister Mrs Merle Mitcham Anderson the sum of 12,000.00 (Two Thousand)
To my brother Guy Mitcham and his wife the sum of $2,000.00 (Two Thousand.)
To Mrs Madie Mitcham the sum of $1,00 (one dollar)
Page 2—
5a
To my niece Jane Mitcham Wilkinson
The sum of $1,000.00 (One Thousand)
6a
To my niece Joan Mitcham Burguet
The sum of $1,000.00 (One Thousand)
7a — To my niece Fay Olive Thurman
The sum of $1,000.00 (One Thousand)
8a — To James L. Cox, 922 Dumaine St. New Orleans
The sum of $1,000. (One Thousand)
9a — To Douglas D Ray 922 Dumaine St. New Orleans
The sum of $1,000. (One Thousand)
10a To Leo Valentino (Bell Captain) Delta Towers
The sum of $500.00 (Five Hundred)
11a To Curtis Sutton (Bell Captain) Delta Tower
The sum of $500.00 (Five Hundred)
■12a-To Mrs. Thelma Young-(cook Walgreens)
The-sum-of ¾50⅛00- (Five Hundred)
13a. To Mr. Sidney Schmitt, office.
The sum of $1,000.00. (One Thousand)
14a—
To my niece Patricia Ann (Patti) Anderson my 2.94 Carat diamond,
set in heavy platinum with fourteen small diamonds embedded,
and The sum of $500.00 (Five Hundred)
15a. To my nephew Floyd Stevens Anderson, Jr.
45 of my 90 shares of stock in Mitcham, Inc.
and my collection of cuff links no #
and the sum of $500.00 Cash (Five Hundred)
16a To my nephew Edward F. Mitcham
45 of my 90 shares of stock in Mitcham, Inc.
and my collection of cuff-links,
and the sum of $500.00 Cash (Five Hundred)
17a To my nephew Brian Stevens Anderson
The sum of $1,000.00 (One Thousand)
18a To my nephew Steve Anderson
The sum of $1,000.00 (One Thousand)
19a To my nephew Glenn Anderson
The sum of $1,000 (One Thousand)
Page 3—
20a — To Mrs Dimple Mitcham Anderson
(1) Eighteenth Century Italian scene—
*347 (1) Pair Dare’ Candelbra with matching Dare’ bowl — (To be passed at her death to Buddy Mitcham—
(1) Pair crystal and silver vases—
21a. To Mrs. Donna Anderson
(1) Bronze Napoleon w/Eagle
(1) French Table (circa 1880).
22a. To My brother Donald Mitcham—
25% of my net estate after payment of legacies and any taxes due.
Page 4—
To my nephew Floyd Stevens Anderson Sr. and his wife ann—
1 Pair Marble and Dare’ warriors (To be willed to Patti Anderson on their deaths.
The balance of my estate:.
It is my intent that any taxes due be paid from xxxxxx — my estate.
Mr. Stanley xxxx Levin is hereby appointed to act as attorney and legal advisor for my estate.
II. I hereby appoint my brother Donald Mitc-ham to serve as executor of my estate, to serve without bond, but to confer with Dr. A. Mark Parker and Mr. Stanley Levin for guidance—
III. My business may be sold, giving E.G. Hienz, CPA first preference—
IV. Any clients desiring their general records may have same upon approval of Mr. Levin—
V. My property at 933 St Louis Street will probably have to be sold to settle my estate.
VI. It is my desire to be buried at Inverness Mississippi — My nephew to Floyd Stevens Anderson Sr, to make-arrangements/—
VII. This, my last will and testament, consisting of Four pages was entirely hand written by me, dated and signed by me on this 5th Day of September 1977, 1977.
(Signed) Med (Percy) Mitcham